BENJAMIN H. BEAN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 9, 1888.*

1. CRIMINAL LAW—*prosecution for rape—evidence—of the complaint filed, as showing a different time.* On the trial of one for rape; the prosecutrix testified that the rape was committed on the evening of May 19. The defendant offered in evidence the complaint of her brother, who was not a witness, made on May 28, alleging the offense to have been committed on that day, which, on objection, the court refused to admit: *Held,* that the ruling of the court was proper.

2. SAME—*statements as to the date of another transaction.* On the same trial, for an alleged rape on May 19, the defendant offered to prove that on May 23 a brother of the prosecutrix proposed the name of the accused for leader of a band, of which they were members, which the court excluded: *Held,* that the evidence was not competent, except to impeach the testimony of the brother in case a proper foundation had been laid.

3. SAME—*complaint by the prosecutrix to her family, of the alleged rape—of proof thereof.* The fact that the prosecuting witness, immediately after the alleged rape, made complaint to her father, may be shown to sustain her testimony that she did make such complaint, but not as to the fact who committed the rape. It would be proper, in such case, to instruct the jury, that her telling her father of the assault was a circumstance tending to sustain the truth of her statement on the trial that such an assault was made.

4. On a trial for rape, the court instructed the jury, that if they believed, from the evidence, that the prosecuting witness told her father of the assault alleged to have been made on her, at the earliest opportunity, then that was a corroborating circumstance, tending to sustain the truth of her statements: *Held,* that while the instruction was, strictly, too broad, in its use of the term "statements," there was no substantial error in it, and that it was not open to the charge of singling out a part of the facts, and thereby giving them undue prominence.

5. SAME—*instruction as to act being against the will.* On such a trial, it is proper to instruct the jury that the question of the act being against the will of the prosecutrix is to be determined upon consideration of all the facts and circumstances proved on the trial. But if some of the circumstances, of but little force or weight, are named, as, the acquaintanceship of the parties, or their relative physical strength, this will not render the instruction erroneous.

6. INSTRUCTION—*on question of reasonable doubt.* As what is a reasonable doubt is liable to be misconceived by a jury, an instruction telling them what it is, at some length, may be excused, when the several propositions are correct.

7. NEW TRIAL — *newly discovered evidence.* A new trial will not be granted on the ground of newly discovered evidence which is merely cumulative, and which is not decisive, or when there has been a want of proper diligence to procure the evidence on the trial.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. O. H. HORTON, Judge, presiding.

Mr. CHARLES E. FULLER, for the plaintiff in error:

The circumstances surrounding the alleged assault should be closely scrutinized, and the defendant's rights guarded, as the charge is easily made and hard to be defended against. *People* v. *Huler,* 3 Hill, 399; Hale's P. C. 635; *Sherwin* v. *People,* 69 Ill. 59; 1 Blackstone's Com. 215; 1 Russell on Crimes, 691; *Austine* v. *People,* 51 Ill. 236.

Even to convict of an assault with intent to commit a rape, the jury must be satisfied not only that the prisoner intended to gratify his passion on the prosecutrix, but also that he intended to do so at all events, and notwithstanding any resistance on her part. *Rex* v. *Lloyd,* 7 C. & P. 318; 3 Jacob's Fisher's Digest, 3578.

The jury should be satisfied, not merely that the act was in some degree against the will of the woman, but that she was, by physical violence and terror, fairly overcome, and forced against her will, she resisting as much as she could, and so as to make the prisoner see and know that she was really resisting to the utmost. *Regina* v. *Rudland,* 4 F. & F. 494; 3 Jacob's Fisher's Digest, 3579.

To constitute a rape on a woman conscious and capable of giving consent at the time of connection, there must be actual resistance of the will. Non-resistance to connection, by a woman conscious and capable of consenting, amounts to con-

37—124 ILL.

sent. *Regina* v. *Barrow*, 38 L. F. M. C. 20; 1 L. R. C. C. 156; 3 Jacob's Fisher's Digest, 3579.

One of the strongest corroborating circumstances is stated to be, "if she showed circumstances and signs of the injury, whereof many are of that nature that women only are proper examiners." (1 Russell on Crimes, 688; 1 East's P. C. chap. 10, sec. 7.) And if the signs do not exist, and are not proved, "if the place where the act is alleged to have been committed was near to persons by whom she might probably have been heard," etc., "these and the like circumstances afford a strong, though not conclusive, presumption that her testimony is feigned." 1 Russell on Crimes, 689; 4 Blackstone's Com. 213, 214.

The state and appearance of the prosecutrix, marks of violence upon her person, and the torn and disordered state of her dress recently after the transaction, at the time of complaint, are material circumstances. 2 Starkie, 241; 4 Blackstone's Com. 214, note 10.

A law treatise ought not to be given to the jury as an instruction. *Dunn* v. *People*, 109 Ill. 635.

The particulars of the complaint of the prosecuting witness are not evidence of the truth of her statements. *Rex* v. *Braziar*, 1 East's P. C. 444; *Rex* v. *Clarke*, 2 Starkie, 241; *People* v. *Crouch*, 2 Wheeler C. C. 42; Wharton on Crim. Law, (original ed.) 296.

The particulars of her complaint are not evidence at all, and tend to prove nothing. It is "the state and appearance of the prosecutrix, marks of violence upon her person, and the torn and disordered state of her dress recently after the transaction, at the time of complaint," that are the "material circumstances which are always admissible in evidence." 4 Blackstone's Com. p. 214, note 10; 2 Starkie, 241; *Regina* v. *Mercer*, 6 Jur. 243; 3 Jacob's Fisher's Digest, 3584.

A person to whom the prosecutrix made a complaint very recently after the offense, as she was on her way home, may

be asked whether she named a person as having committed the offense, but not whose name she mentioned. *Regina* v. *Osborne*, Car. & M. 622.

The mere fact, and that only, of the prosecutrix making complaint of the outrage, and the state in which she was at the time of making the complaint, are evidence. *Regina* v. *Walker*, 2 M. & R. 212; *Rex* v. *Clarke*, 2 Starkie, 241; 1 Russell on Crimes, 689, note c.

Not even the name of the party can be shown. *Rex* v. *Wink*, 6 C. & P. 397.

Mr. George Hunt, Attorney General, and Mr. Charles A. Works, State's Attorney, for the People.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

At the October term, 1887, of the Winnebago circuit court, the plaintiff in error was indicted for, tried, and convicted of the crime of rape, and sentenced to imprisonment in the penitentiary for one year. He brings this writ of error for the reversal of the judgment.

It is insisted that the evidence does not support the verdict. It appears from the testimony, that the alleged offence was committed upon the prosecutrix in her father's garden, about twelve rods from the house, on the evening of May 19, 1887,—a pleasant evening, when it was "middling light,"—at about seventeen minutes past eight o'clock, or just as the 8:17 train pulled out of the station. Her father's house was on the west side of the river, in Cherry Valley, (a village of some six hundred inhabitants,) on high ground, and the place in the garden where the assault was claimed to have taken place, was in full view of the hotel, mill, and most of the business places of the town. Her father was in the house, in bed, and the front door was open. There was a house just across the alley, where Mr. and Mrs. Kettle lived, and a Swede family lived in another

house near by. The accused was the family physician. His weight was about two hundred pounds. The prosecutrix was twenty-two years of age, and weighed about one hundred and twenty-seven pounds. Her story is, that she stood by a four-board fence of the garden, leaning her arms on the fence, watching the train, when, all at once, without her having previously seen him, the defendant grabbed her from the other side of the fence, said he was there for the purpose of getting the best of her, climbed over the fence, pulled her some distance, threw her down upon the ground, and violated her person. She states that she made all the resistance in her power, describing particularly what she did; that she cried out loud all the time,—as loud as she had the strength to cry,—though in describing the particulars in that respect they do not show very satisfactorily that outcry to such extent was made. Her father testifies, that somewhere near half-past eight o'clock that evening, she came to his room, where he was in bed, and made complaint of the assault. Her two brothers, Maurice and George Reid, testify that on the evening in question they met the accused on the west side of the river, in Cherry Valley, some twenty-five or thirty rods from their father's place, and went directly home; that on going into the house they found their sister crying and sobbing, and in answer to inquiry what was the matter, she told of the occurrence. They say her hair was all down, and the back of her clothes was all dirt. There is no testimony directly contradicting any of these statements. The facts testified to certainly tended to prove the commission of the cime alleged, and if the jury believed the testimony, we could not say that they were not justified from it in finding that the offence charged had been committed. There is somewhat of an air of improbability, that, under all the circumstances disclosed by this record, the crime charged in the indictment should have been committed by this defendant. But the question of the credibility of witnesses is one peculiarly for the jury, and we think their finding in that respect must

in this case be accepted as final. We do not think there is warrant for saying that the verdict is not sustained by the evidence.

On May 28, 1887, a complaint, before a justice of the peace in Winnebago county, was made and sworn to by James Reid, the brother of the prosecutrix, charging the defendant with the offence for which he 'was indicted, and alleging that the offence was committed on the 26th day of May, 1887. This complaint was offered in evidence by the defendant on trial under the indictment, and its exclusion by the court is urged as error. James Reid was not a party. He was not a witness upon the trial, and there is no ground shown to make his statement on another occasion, under oath or otherwise, competent evidence in the case.

Defendant offered to prove by the witness Crompton, that himself and Maurice Reid, and others, were present at a band meeting in Cherry Valley, on May 23, 1887, and that Maurice Reid then proposed the name of the defendant for leader or director of the band. On objection, this offered evidence was excluded by the court, and exception taken. We do not perceive on what ground this evidence was competent, except for the purpose of impeachment of the witness Maurice Reid, and no proper ground had been laid in his examination, by calling his attention to the matter of such proposal, to render the evidence admissible for the purpose named.

Complaint is made as to the giving of instructions on behalf of the People. The first instruction is complained of, which relates to the meaning of "reasonable doubt." It is said this instruction might answer for a treatise on the subject of reasonable doubt, and that a law treatise ought not to be given to the jury as an instruction. What is a reasonable doubt is liable to be misconceived by a jury, and in order to their full understanding of its import somewhat of amplification may be excusable. The instruction is rather unusual in length, upon the subject, it consisting of seven specifications of what is,

and what is not, a reasonable doubt. It is not claimed that any one of the statements is incorrect, and we believe that they have all received the sanction of this court. We can not hold that the instruction is erroneous.

It is said the third instruction, relating to the law as to penetration, is not based on any evidence in the case. We think otherwise. The witness says·there was sexual intercourse.

The fifth instruction is as follows:

"The court instructs you, that if you believe, from the evidence, that the prosecuting witness told her father of the assault alleged to have been made on her, at the earliest opportunity, then that is a corroborating circumstance tending to sustain the truth of her statements."

As the witness, in the complaint to her father, as well as in her testimony, had stated that the defendant was the offending party, it is said this instruction informed the jury that telling her father of the assault was a corroborating circumstance tending to sustain the truth of the witness' statement that the defendant was the person who committed the offence, and ·that the particulars of her complaint are not evidence of the truth of her statements. The complaint made by the witness was proper evidence only of the fact of making complaint, and not of who the person was that committed the offence. On the giving of the evidence of the complaint, no objection was made to the statement of the name of the person involved. The instruction was, strictly, too broad in its use of the term "statements." The instruction might properly have been more guarded, and have said that the prosecuting witness' telling her father of the assault was a circumstance tending to sustain the truth of her statement, on trial, that such an assault was made. In that form the instruction was unobjectionable. This was the substantial meaning of the instruction given, and was probably so accepted. We do not think the instruction erroneous, as is claimed, in singling out a portion of the facts and giving undue prominence thereto.

By the seventh instruction the jury are directed, in determining whether sexual connection, if had, was against the will of the prosecutrix, to "take into account all the surrounding circumstances, the acquaintanceship of the parties, the relative physical strength of the defendant and the complaining witness, the condition as to fear, or otherwise, in which the complaining witness then was, * * * as well as all other facts and circumstances proved on the trial." It is objected to this instruction that it is difficult to see how the fact of the acquaintanceship of the parties, or of their relative physical strength, tended to prove that the sexual act, if committed, was against the will of the woman. The instruction did not say what weight these facts should have in determining this question, or that they should have any weight, but that they, and all other facts and circumstances proved on the trial, should be taken into account in determining the question. Because there was mention made of one or two weak or immaterial circumstances, we do not think it should have the effect of making the instruction erroneous, and reversing the judgment,—the instruction being, essentially, that the question of the act being against the will of the prosecutrix, was to be determined upon consideration of all the facts and circumstances proved on the trial.

It is further objected to the instruction, that it is faulty in singling out particular facts, and calling special attention of the jury to them. The instruction is not, in our view, so objectionable in this respect as to make it fatally defective. Very many of the instructions asked and given for the defendant were equally, and even more, obnoxious to this objection. There were twenty-five instructions given on behalf of the defendant, instructing the jury most fully and favorably for the defendant, upon every aspect of the defence. We find no substantial error in any of the instructions given on behalf of the People, and that plaintiff in error has no just cause of complaint on the score of instructions.

It is finally urged, as a ground for reversal of the judgment, that the court erred in not granting defendant's motion for a new trial because of newly discovered evidence, shown by affidavits of the defendant, C. Wycliff Loomis, Lyman Ward, Edward Rowley, Henry Cruikshank and Benjamin C. Kimblin.

On the trial the witness Olney testified, that on the 26th day of May, 1887, she saw the prosecutrix talking with the defendant on the bridge in Cherry Valley; that she wanted him to come up to her father's place,—her father's; that defendant said he could not—he had to go into the country. She said, "Come up as soon as you can." The witness Brown testified, on the trial, to seeing defendant on the bridge in Cherry Valley some time in May, 1887, when the prosecuting witness came along and spoke to defendant, and said she was sick, and wanted him to come up, and he said he had got to go into the country, and could not; that Olney was present. The affidavits of Ward, Rowley and Cruikshank were only to the effect that on May 26, 1887, they saw the defendant and the prosecutrix engaged in a conversation on the bridge in Cherry Valley. Defendant says in his affidavit, that, relying on the testimony of said Olney and Brown, he did not seek for or call other witnesses. These affidavits do not show any evidence newly discovered since the trial, and the additional evidence is but cumulative to that of Olney and Brown, in no manner conclusive, and manifestly affords no ground for a new trial, to give opportunity for the introduction of this evidence.

Kimblin is the keeper of a billiard hall in Cherry Valley, and Loomis a traveling salesman, residing at Garden Prairie, Illinois. Their affidavits are to the effect, that on the 19th day of May, 1887, the defendant came into the billiard hall of Kimblin, in Cherry Valley, at about the hour of seven o'clock P. M., of that day, and remained there continuously until after the hour of nine o'clock P. M., of that day. Loomis says that defendant was somewhat under the influence of intoxicating liquors at the time, and Kimblin says that defendant was con-

siderably intoxicated. Loomis states, that by reference to his note-book and memorandum which he kept, he is absolutely and certainly sure that the defendant was in said billiard hall during and between the hours aforesaid. The defendant, in his affidavit, states the same as to his being in the billiard hall all the time mentioned; that he did not know, or could not remember, the persons who were present, except that he recollected the proprietor, Kimblin, was there, and two or three others, whom he took to be railroad men. Both he and Kimblin state, that, previous to the trial, defendant made repeated applications to Kimblin for information as to what the latter knew about defendant being in the billiard hall at the time, and for the names of the persons who were present there, and that Kimblin invariably told defendant that he had better not call him, Kimblin, as a witness for defendant, on his trial; that he could and would do him no good as a witness; and that Kimblin also refused to tell defendant the names of any persons who were present in the billiard hall during said evening, or to give him any information that would lead to their discovery. Kimblin states, as his reason for so doing, that he had special reasons, peculiar to himself and his business, for not divulging to the defendant the requested information, and that he then thought and believed that he would suffer pecuniary loss, and might, perhaps, be subjected to prosecution under the gaming laws of this State, if it should appear to the public who were present on the evening of the said 19th day of May, 1887.

It thus appears that defendant, before the trial, knew that there were persons present with him in the billiard hall, and what he has discovered since the trial is the name of one of the persons who was present,—Loomis. We are of opinion there was not sufficient diligence in procuring this testimony upon the trial. Kimblin might have been subpœnaed to attend as a witness on the trial. Application might have been made to the court for a continuance of the cause, in order to give

time for the ascertainment of the names of the persons present at the billiard hall, and afford opportunity for the procurement of their testimony upon the trial. No such application was made, nor was Kimblin subpœnaed. The latter's statement that he could not help defendant in any way by his testimony, and that defendant had better not call him as a witness, as he would do him no good, can not be taken as a sufficient excuse for not procuring the attendance of Kimblin as a witness. All due diligence must be exacted of parties in making preparation for trial. If a party, before trial, knows of the existence of needed testimony, he should exhaust all reasonable means in his power to secure the evidence upon his trial. If he fails to do so, and chooses to take the risk of going into trial in the absence of the testimony, and there be an adverse verdict, he should be left to abide the consequence, and not have granted to him a new trial for the purpose of the procurement of such testimony upon another trial. Any other practice would be pernicious in its operation. Were this additional testimony had upon another trial, it would not be at all conclusive of the result. There would then be an equipoise of witnesses upon the point of the *alibi*,—three witnesses (defendant, Kimblin and Loomis) for, and three (the prosecutrix and her two brothers) against, an *alibi*.

We think the motion for a new trial upon the ground of newly discovered evidence was properly overruled.

Finding no material error in the record, the judgment must be affirmed.               *Judgment affirmed.*

Mr. Justice Craig, dissenting.