## GEORGE W. HOWELL

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 17, 1899.*

1. NEW TRIALS—*affidavit for, on ground of new evidence—when insufficient.* An affidavit in support of a motion for new trial does not show due diligence in seeking to discover the name and procure the attendance of a witness claimed by the accused to have been present when the bond was signed by the party whose name the accused was convicted of forging, which fails to state the names of the parties of whom the accused made inquiries.

2. SAME—*one unable to ascertain name of important witness should ask for continuance.* One charged with crime who has forgotten the name of an alleged important witness should ask for a continuance to enable him to ascertain the witness' name and procure his testimony, and if he fails to do so and goes to trial without such testimony he is not entitled to a new trial in order to procure it.

3. The court reviews the evidence in this case and declines to disturb the verdict of the jury convicting the plaintiff in error of forging a bond.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

GRANT NEWELL, and JULIUS N. HELDMAN, for plaintiff in error.

EDWARD C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, HARRY OLSON, CHARLES A. HILL, and B. D. MONROE, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an indictment against the plaintiff in error for forging a bond. The plaintiff in error pleaded not guilty, and was tried by a jury, who returned a verdict finding him guilty of forgery, and fixing his punishment at imprisonment in the penitentiary. After the jury was polled and the verdict was entered of record, the defendant made a motion for a new trial, supported by affidavits.

This motion for new trial was overruled, and exception was taken by defendant's counsel.

No objection is made to the action of the court below in admitting or refusing to admit evidence, or in giving or refusing to give instructions. The sole grounds, upon which it is sought to reverse the judgment, are, first, that the verdict is contrary to the law and the evidence; and, secondly, that a new trial should have been granted on the newly discovered evidence, as shown by the affidavits filed on the motion for new trial.

*First*—As to the point that the verdict is not sustained by the evidence.

In March, 1896, plaintiff in error, George W. Howell, entered into the service of Merriam, Collins & Co., wholesale grocers in Chicago, as a traveling salesman. Plaintiff in error then was, or had been a resident of the State of Michigan, and was, by the terms of his employment, to sell goods and collect accounts for said firm. To secure the faithful performance of his contract with said firm he was required to give a bond. He entered into the employment at once, and, in the prosecution thereof, traveled in the northern part of Michigan. He executed the bond required of him on June 23, 1896, and delivered the same to Merriam, Collins & Co. about June 24, 1896. The bond sets forth, that Howell had been assigned to the position of salesman by Merriam, Collins & Co., and in such capacity might, during the term of his employment, handle money or other valuables belonging to said firm, and, in order to secure them against loss, furnish them a bond for $2000.00. The bond is signed by George W. Howell and "Benj. D. King," with a seal opposite each name.

The signatures to the bond purported to have been witnessed by one Frank Joslyn. The indictment alleges that Howell, on June 23, 1896, feloniously, fraudulently and falsely forged and counterfeited said bond.

After giving the bond, plaintiff in error continued to perform services for the firm until about the month of

178—12

August, 1897, at which time it appeared that he was in default on the bond to the amount of $700.00. Plaintiff in error, however, denied that he was in default and refused payment of the bond. Thereupon, the firm notified the surety on the bond, Benjamin D. King, of Muskegon, Michigan, and demanded from him payment of the sum due. When the bond was given to the firm with the name of King upon it as surety, they made inquiries as to the responsibility of King, and, finding that he was responsible, accepted the bond and filed it away. When demand was made upon King by the firm for the amount of the shortage incurred by Howell under the bond, King replied that he had never executed any such bond, and refused payment thereon.

It is conceded, that the bond was executed in Muskegon, Michigan, and that King was a physician in active practice in that place, and had been the family physician of Howell prior to the time of the alleged making of the bond. King swore upon the trial, that he never made any such bond, and never signed his name to the same. Six witnesses living in Muskegon swore, that they were acquainted with the handwriting of King, and that the signature to the bond, purporting to be the signature of King, was not in his handwriting. One of these witnesses was the cashier of a bank in Muskegon where King had done business. Another was the teller of a savings bank where King had done business. Two of these witnesses were druggists in Muskegon, who had put up prescriptions for King as a physician. One of them was the secretary of a building and loan association, in which King was a director; another was the secretary of the Curtis Automatic Gate Company of Muskegon, of which King was the president.

The defendant took the stand, and swore that the bond was signed by King in his presence. Joslyn, a lawyer in Muskegon who signed the bond as a witness to the signatures, swore that Howell came into his office, and

handed him the bond with his own name and that of
King attached to it, and asked him to witness the sig-
nature of King. Joslyn says, that he took the bond, and
told Howell that he would see King about it.   Joslyn's
office was just across the street from King's in Muskegon.
Joslyn says that, when he met King in the street and
asked him if he had signed a bond for Howell, King an-
swered "Yes." The evidence shows that, before the time
when the bond in question is alleged to have been exe-
cuted, King had signed two other bonds for Howell. One
of these other bonds had been given by Howell to a firm
in Chicago by the name of Puhl & Webb.   The other of
the prior bonds, signed by King, had been given to a
party by the name of Lynch, and is spoken of in the tes-
timony as the Lynch bond.   Howell had become liable
on the Lynch bond on account of a shortage incurred
thereon by him, and King, in June, 1896, had been called
upon to make up the shortage upon this Lynch bond, and
at that time was having trouble in reference to the same.
The matter of the Lynch bond, it appears, was settled in
some way by King.   Dr. King swears that, when Joslyn
asked him if he had signed a bond for Howell, he sup-
posed he referred to the Lynch bond, about which he was
at that time having trouble, and that he answered "yes"
for that reason, knowing nothing at that time about the
Merriam, Collins & Co. bond.   King swears, that he never
heard of the Merriam, Collins & Co. bond, until he was
called on by Merriam, Collins & Co. in August, 1897, to
pay the shortage upon that bond.

The defense sought to show by the testimony of two
witnesses, to-wit, a brother and a brother-in-law of How-
ell, that Dr. King had made admissions prior to August,
1897, tending to show that he had knowledge of the bond
given to Merriam, Collins & Co.   The object of this tes-
timony was to contradict the statement of King that he
never heard of the latter bond until August, 1897.   It
clearly appears from the cross-examination of one of

these witnesses, that the bond referred to in his conversation with Dr. King was not the bond here in question, but one of the previous bonds that had been given by King. We do not regard the testimony of these witnesses, introduced for the purpose of contradicting King by showing prior admissions inconsistent with his testimony on the stand, as establishing the admissions claimed.

We have thus stated the material portions of the testimony in the case.   We are unable to say, that the verdict is so clearly contrary to the weight of the evidence as to justify us in setting it aside.   The jury are the judges of the facts and of the weight of the evidence. They saw the witnesses, and heard their testimony, and evidently believed that the bond was not executed by the surety, as claimed by the plaintiff in error. "The question of the credibility of witnesses is one peculiarly for the jury, and we think their finding in that respect must in this case be accepted as final." (*Bean* v. *People*, 124 Ill. 576).

The objection that the verdict is contrary to the law and the evidence cannot be sustained.

*Second*—As to the overruling of the motion for new trial upon the ground of newly discovered evidence.

Upon the trial the plaintiff in error, in his testimony, did not say that any other person was present when, as he claims, the bond was signed by Dr. King, except Dr. King and himself.   Upon the motion for new trial he filed an affidavit, that one Chadwick went with him to Dr. King's office when the bond was signed, and stood there and saw King sign the bond.   He gives, as a reason why Chadwick was not produced upon the trial, that he had forgotten the name of the person, who went with him to King's office, and at that time was unable to recall the name of such person.   His affidavit is a singular one, in view of the fact that he had known Chadwick for a number of years.   He also says, that he had some business with Chadwick at that time at his mother's house with reference to the purchase of some property by Chadwick

from his mother.   He produces the evidence of four persons in Muskegon, who swear that Chadwick is a reliable person, while the State produced the evidence of nine persons in Muskegon who swear that Chadwick rented rooms in Muskegon for gambling and assignation purposes, and was a man whose reputation for truth and veracity was very bad, and whom they would not believe under oath.

We pass no opinion upon the truth or falsity of these affidavits filed by the plaintiff in error upon the motion for new trial, and do not wish to be understood by anything here said, as indorsing the practice of filing affidavits attacking the character or credibility of persons, whose affidavits are submitted to the court upon a motion for new trial.   In this case we are of the opinion, that the court committed no error in overruling the motion for new trial, upon the ground that the affidavit of the plaintiff in error, filed upon that motion, does not show, that he used reasonable diligence to discover the witness, Chadwick, with a view of presenting his testimony upon the trial of the case.

Plaintiff in error states in his affidavit, that he made every effort to find Chadwick, but could not do so.   This averment in the affidavit was not sufficient to show diligence in the matter of procuring Chadwick's testimony upon the trial.   Application might have been made to the court for a continuance of the cause, in order to give time for the ascertainment of the name of the person, who is alleged to have been present at the alleged time of the signing of the bond.   No such application was made. "All due diligence must be exacted of parties in making preparation for trial.   If a party, before trial, knows of the existence of needed testimony, he should exhaust all reasonable means in his power to secure the evidence upon his trial.   If he fails to do so, and chooses to take the risk of going into trial in the absence of the testimony, and there be an adverse verdict, he should be left to abide

the consequence, and not have granted to him a new trial for the purpose of the procurement of such testimony upon another trial.    Any other practice would be pernicious in its operation." . (*Bean* v. *People, supra*).

In the application for a new trial upon the ground of newly discovered evidence the affidavit of the plaintiff in error, alleging that he had made every effort to find Chadwick before the trial, fails to show of whom he made inquiry, and for this reason is not sufficient to establish the exercise of due diligence. (*Smith* v. *Wagaman*, 58 Iowa, 11).

The court was justified in refusing to grant a new trial upon the ground of newly discovered evidence for the insufficiency of the affidavit in the respect above indicated.    Accordingly the judgment of the criminal court of Cook county is affirmed.    ·    *Judgment affirmed.*