[No. 6208. Decided September 8, 1906.]

THE STATE OF WASHINGTON, *Respondent,* v. D. A. GRIFFIN, *Appellant.*[1]

RAPE—EVIDENCE—COMPLAINTS MADE. In a prosecution for rape it is error to permit the witnesses to whom the prosecutrix had made complaint to state the name of the person whom she claimed to have committed the offense.

SAME—COMPLAINTS—DELAY IN MAKING. While ordinarily complaints made by the prosecutrix for an alleged rape are to be submitted to the jury under proper instructions, they should be excluded where no complaint was made for a year and a half after the defendant first took liberties with her person, and eight months after his first felonious assault, and six months after the consummated offense, where her age and surroundings furnished no sufficient excuse for the delay; since in such case the evidence of complaints ceases to be corroborating.

SAME—INSTRUCTIONS. In such a case, it is error to submit to the jury the question whether the complaints were seasonably made.

SAME—TRIAL—INSTRUCTIONS. In a prosecution for rape upon one under the age of consent, claimed to have been made by force and notwithstanding resistance and outcry, it is error to refuse to instruct that the jury should take into consideration whether there was injury to the person or clothing, whether complaint was sea-

[1] Reported in 86 Pac. 951.

sonably made, whether persons in the house could have heard out-cry, if any were made, and whether the prosecutrix did make outcry in resisting assault.

SAME—ISSUES AND PROOF—QUESTION FOR JURY. In a prosecution for rape it was error to withdraw from the jury the theory of the defense that the prosecution was instigated to shield another party, where there was evidence that she was surprised in a compromising position with another man shortly before the charge was preferred against the defendant.

CRIMINAL LAW—EVIDENCE—FABRICATION OF EVIDENCE. An attempt to obtain a flash-light photograph of the defendant in a compromising position with a female under the age of consent, whom it was alleged he had assaulted and raped, would not be a conspiracy to fabricate testimony, in case he voluntarily assumed the position.

WITNESSES—CROSS-EXAMINATION—IMPEACHMENT. In a prosecution for rape, a very wide latitude should be allowed to the defendant in cross-examining his nephew, who owed no duty to the prosecutrix, but spent half·his time for several months in working up evidence against the defendant and manifested unusual interest in the case; and the defendant should be permitted to impeach his testimony as to any matter bearing directly on the case.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered December 9, 1905, upon the trial and conviction of the crime of rape. Reversed.

*Fairchild & Bruce,* for appellant.
*Virgil Peringer* and *E. E. White,* for respondent.

RUDKIN, J.—The information in this case charges that the defendant, on or about the 9th day of December, 1904, in the county of Whatcom, state of Washington, did wrongfully, unlawfully, and feloniously, by force and against her will, rape and carnally know Winnie Johnson, a female child under the age of eighteen years, to wit, of the age of fifteen years. From a judgment of conviction the present appeal is prosecuted.

The material facts are as follows: The prosecuting witness was fifteen years of age on the 29th day of March, 1904, and the alleged offense was committed on the 9th day of the ensuing December. She lived in or about .Deming, a small

town in Whatcom county, from childhood, except for a period
of about three years immediately before taking up her resi-
dence with the appellant and his wife. She had attended the
public schools and Sunday school in the town, and had a
passing acquaintance with nearly all the people residing
there. She commenced to reside with the appellant and his
wife at their hotel in Deming about two and one-half years
prior to the commission of the alleged offense, and continued
to reside there on terms of apparent intimacy with the appel-
lant, until the 1st day of July, 1905. She testified that the
appellant came to her room in the nighttime at various times
during the spring and summer of 1904, in the absence of his
wife in Portland or Whatcom, and took liberties with her
person, but nothing beyond this occurred until the night of
October 10. At that time the appellant attempted to ravish
her by force and against her will, and similar attempts were
made on the nights of the 17th day of October and the 17th
day of November, following, but on each occasion some per-
son appeared in the hallway of the hotel near her room and
the appellant left without accomplishing his purpose. On
the night of December 9, 1904, the appellant again came to
her room and ravished her by force and against her will. She
resisted to the utmost of her power and screamed for assist-
ance at the top of her voice. As stated above, she continued
to live at the hotel with the appellant and his family until
the 1st day of July, 1905. She further testified that she first
complained of the outrage to the lady cook at the hotel dur-
ing the first week of June, 1905, and that a few days later
she complained to a young man, a nephew of the appellant.
Some days later she complained by letter to her stepmother,
who resided in Seattle. Her reasons for not making com-
plaint sooner are thus stated in her own language:

"I was there and I had no home but theirs, and I was not
able to make a living for myself, I thought. I didn't realize

that he would do or could do what he did, or it would come to that. I was partially blind and I was not able to make a living for myself very easy, and I thought a good deal of his wife, Mrs. Griffin, and I thought that if I ever told her and she believed me it would cause a great deal of trouble, perhaps separation; if she did not believe me she would throw me out like a dog, and I had no place that I could really go to, at least I thought I didn't, as my stepmother was not able to provide for me, and I was an orphan girl and partially blind, and my health was at the time not very good."

The persons to whom these several complaints were made were called as witnesses on the part of the state, and were permitted to testify, over the objection of the appellant, to the fact that complaints were made to them at or about the time stated by the prosecuting witness, and were permitted to testify, over like objection, to the details of such complaints to the extent of naming the appellant as the guilty party.

In its charge to the jury the court stated, among other things, that they had a right to consider,

". . . whether or not under such circumstances as disclosed by the testimony in this case and the nature of the offense charged, whether complaint was likely to be made under all the circumstances as detailed, and if complaint was made, to whom, and the circumstances under which made, and whether made in a reasonable time, taking into consideration all the circumstances as detailed by the witness on the stand," and that "such facts and circumstances are all admissible in evidence as testimony to corroborate the testimony of the prosecuting witness."

The appellant assigns as error the ruling of the court in permitting the witnesses, called to prove the fact that the prosecuting witness had complained to them of the outrage, to testify that she named the appellant as the guilty party. We think this assignment is well taken. While there is a conflict of authority on the question, the great weight of authority sustains the rule announced by this court in *State v. Hunter*, 18 Wash. 670, 52 Pac. 247. The court there said:

"After a pretty thorough examination of the cases we think the better rule is to restrict the evidence to the fact of complaint, and that anything beyond this is hearsay of the most dangerous character."

While some of the cases hold that this rule is not violated by permitting the witnesses to state the name of the party accused, yet nearly all the authorities cited in *State v. Hunter* are to the contrary. Thus, in *Thompson v. State*, 38 Ind. 39, the court said:

"The following propositions will be found sustained by the authorities, many of which we cite: (1) That the prosecutor may show by the testimony of the prosecuting witness, or that of other witnesses, that she made complaint of the outrage recently after its commission, and when, where, and to whom it was made. (2) That he cannot be allowed to prove the name of the person charged with the crime, or the particulars narrated by her. (3) On the direct examination the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive in answer only a simple yes or no. (4) That such statement is only corroborative of her testimony and is not evidence of the fact upon which the jury can find the defendant guilty; and when she is not a witness in the case, it is wholly inadmissible;"

and many authorities are cited to sustain the rule there announced. See, also, *Bray v. State*, 131 Ala. 46, 31 South. 107; *Stevens v. People*, 158 Ill. 111, 41 N. E. 856; *State v. Daugherty*, 63 Kan. 473; *Ashford v. State*, 81 Miss. 414, 33 South. 174; *Anderson v. State*, 82 Miss. 784, 35 South. 202; Wigmore, Evidence, § 1136; 23 Am. & Eng. Ency. Law (2d ed.), p. 876.

Error is also assigned to the ruling of the court in admitting in evidence the complaints of the outrage made to third persons under the circumstances above set forth. The origin of the rule admitting such complaints in evidence in this class of cases is thus stated by Mr. Justice Holmes, in *Commonwealth v. Cleary*, 172 Mass. 175, 51 N. E. 746:

"The rule that in trials for rape the government may or must prove that the woman concerned made complaint soon after the commission of the offense is a perverted survival of the ancient requirement that she should make hue and cry as a preliminary to bringing her appeal. Glanville XIV 6; Brac. fol. 147 a, Fleta I. ch. 25, § 14. St. 4 Edw. I. St. 2. Appeals became obsolete and left rape to be dealt with by indictment before the development of the modern law of evidence. Lord Hale, after stating the old law as to appeals, quoting Bracton, went on to deal with the evidence on an indictment for rape. Having stated that the party ravished might give evidence upon oath, the value of which would be affected by corroborative facts, he recurred to the matter of fresh complaint, and said that if she 'presently discovered the offense, made pursuit after the offender,' etc., 'these and the like are concurring evidences to give greater probability to her testimony.' 1 Hale P. C. 632 and 633. Obviously this was suggested by and merely echoed the requirement in appeals, but it gave that requirement a more or less new turn. If it means what it has been taken to mean, that the government can prove fresh complaint as part of its original case, it cannot be justified by the general principles of evidence which now prevail. In general, you cannot corroborate the testimony of a witness by proof that he has said the same thing before, when not under oath. But Lord Hale's statement of the law has survived as an arbitrary rule in the particular case, notwithstanding the later developed principles of evidence, and, although nowadays recognized as an exception attempted to be fortified by exceptional reasons, still is put upon the ground upon which it was placed by his words. The evidence is not admitted as a part of the *res gestae,* or as evidence of the truth of the things alleged, or solely for the purpose of disproving consent, but for the more general purpose of confirming the testimony of the ravished woman."

Some of the courts adhere to the ancient rule, and exclude evidence of complaints made any considerable length of time after the commission of the offense. *People v. Lambert,* 120 Cal. 170, 52 Pac. 307; *People v. O'Sullivan,* 104 N. Y. 481, 10 N. E. 880, 58 Am. Rep. 530; *Dunn v. State,* 45 Ohio St. 249, 12 N. E. 826; *Lyles v. United States,* 20 D. C. App.

559; *Regent v. Lillyman,* 2 Q. B. 167 (1896). Other authorities hold that mere lapse of time will not exclude evidence of the complaint, but is a circumstance for the consideration of the jury. *State v. Niles,* 47 Vt. 82; Wigmore, Evidence, § 1135; Greenleaf, Evidence (16th ed.), § 469c.
In *Commonwealth v. Cleary, supra,* it is said that the question of time rests in the discretion of the trial court. From these divergent views it is difficult to adopt any rule that may be said to be supported by the weight of authority. There is much force in the remarks of Bronson, Judge, in *People v. Hulse,* 3 Hill 309. After quoting the admonitory words of Lord Hale, the learned justice said:

"Cases of this character do not call for any relaxation of the rules of evidence for the purpose of supporting the accusation. On the contrary, courts and juries cannot well be too cautious in scrutinizing the testimony of the complaining witness, and guarding themselves against the influence of those indignant feelings which are so naturally excited by the enormity of the alleged offense. Although no unreasonable suspicion should be indulged against the accuser, and no sympathy should be felt for the accused, if guilty, there is much greater danger that injustice may be done to the defendant in cases of this kind, than there is in prosecutions of any other character."

The authorities are substantially agreed upon the probative force of such complaints as evidence. As stated by Blackstone:

"If the witness be of good fame; if she presently discovered the offense, and made search for the offender; if the party accused fled for it; these and the like are concurring circumstances which give greater probability to her evidence. But on the other side, if she be of evil fame, and stand unsupported by others; if she concealed the injury for any considerable time after she had opportunity to complain; if the place where the fact was alleged to be committed, was where it was possible she might have been heard, and she made no outcry; these and the like circumstances carry a strong, but

not conclusive, presumption that her testimony is false or feigned." 4 Blackstone, Com., 213.

Since this is the rule governing such complaints, if the jury were properly instructed as to their effect, it is not easy to see how a defendant could be prejudiced by the admission of evidence of the complaint in all cases. If seasonably made, it would tend to corroborate the prosecuting witness. If unduly delayed, it would tend to discredit her. But, however that may be, since the only purpose of admitting evidence of the complaint is to show that the conduct of the prosecuting witness was consistent with her testimony, and to rebut any inference that might arise from silence or concealment, it would seem to follow, on principle, that evidence of the complaint should be excluded whenever from delay or otherwise it ceases to have corroborative force. In the nature of things there must be some limit of time beyond which such complaints cease to corroborate. In the case at bar no complaint was made until nearly a year and a half after the appellant first took liberties with the person of the prosecuting witness; until about eight months after he made his first felonious assault; and until nearly six months after the crime was consummated. There was no threat, no restraint, no lack of opportunity, nothing in the age of the girl or in her surroundings to excuse the delay. The excuse she herself gave is certainly not such as the law recognizes. Nor did she refrain to complain from excess of modesty, as she told her story before the court and jury without halt or hesitation, and voluntarily arranged with the cook and a young man to get a flash-light photograph of herself and the appellant in some compromising position. Furthermore, after she had complained to the cook, they took into their confidence the nephew of the appellant, who was very hostile to him, in order that he might aid them. After all this, she complained by letter to her stepmother. To permit parties to manufacture testimony in this way by making fresh complaint at such

a stage seems to us contrary to every principle of law. While under ordinary circumstances the court must submit the complaint with all the attending circumstances to the jury, under proper instructions, yet in cases such as this, where there have been months of inexcusable delay, we think that justice demands that the complaint should be entirely excluded from the consideration of the jury.

For the same reason the court erred in submitting to the jury the question whether the complaint was seasonably made, and in instructing them that they might consider such complaint as corroborative of the prosecuting witness. In this connection the appellant requested an instruction, a portion of which was given in substance and a portion of which was refused. The instruction is too long to set forth *in extenso,* but that portion refused is in the following words:

"The fact whether the evidence discloses whether or not there was any injury to her person or to her clothing, and the fact whether she made complaint as soon as practicable and without unreasonable delay, is to be considered. You have the right to consider in weighing this testimony that it is natural that when a crime of this kind has been committed upon a female against her will, that she will make immediate complaint to her mother if the opportunity offers, or to some other confidential friend to whom she can make it. You have a right to consider, and it is your duty to consider in weighing this testimony, the surrounding circumstances, whether or not there were people in the house who could have heard her had she made an outcry, and whether or not she did make an outcry in resisting this assault. If the defendant accomplished this assault, he would be guilty, irrespective of whether the prosecutrix consented or not, if you should find she was under the age of eighteen years as above instructed, and these matters that I have called to your attention are proper circumstances to be considered in weighing the testimony of the prosecutrix as to the manner in which the assault is alleged to have occurred."

We think this instruction contains a correct statement of the law applicable to the facts of the case, and should have been

given. *Conners v. State*, 47 Wis. 523, 2 N. W. 1143; *State v. Connelly*, 57 Minn. 482, 59 N. W. 479; *Reynolds v. State*, 27 Neb. 90, 42 N. W. 903, 20 Am. St. 659.

The respondent suggests that, inasmuch as this is a charge of statutory rape and the question of force not material, the rules we have been discussing do not apply. If this had been a case of voluntary intercourse on the part of the prosecuting witness, it is difficult to understand how the question of complaint of the outrage could enter into the case, as that human instinct which impels the woman to complain of an outrage of this kind when accompanied by force impels her with the same unerring certainty to conceal her shame where the intercourse is voluntary. The prosecuting witness testified to a case of forcible rape. The complaint is admissible in such cases because it is the natural instinct of a woman to complain of an outrage of this kind at the first opportunity, and a law changing the age of consent does not work a corresponding change in human nature itself. If it is the natural instinct of a girl of fifteen or sixteen years of age to complain of an outrage of this kind, when the age of consent is ten or twelve years, the same human instinct will manifest itself when the age of consent is raised to eighteen years, or abrogated.

There was testimony tending to show that the prosecuting witness was surprised in a compromising position with another man shortly before she preferred this charge against the appellant. It further appeared that she was examined by a physician at some time before the trial. On these facts the court charged the jury that they could only consider the fact that the prosecuting witness had intercourse with such other person, if they found such to be the fact, as a circumstance tending to explain her condition when examined by the physician. It was the theory of the defense that the appellant was charged with this offense immediately after the prosecuting witness was discovered in a compromising position with this man, and that the charge was preferred against

the appellant for the sole purpose of stopping further inquiry and shielding the person with whom she was consorting. It was error for the court to withdraw this theory of the defense from the consideration of the jury.

Error is also assigned in the instruction of the court relating to the question of conspiracy. It appeared in evidence that the prosecuting witness returned to the appellant's hotel soon after she left there on the 1st of July, and that her return was the result of an agreement or conspiracy between the prosecuting witness, her stepmother, the nephew of the appellant, and the cook of the hotel, in order that they might obtain a flash-light photograph of the appellant in a compromising position with the prosecuting witness, should the opportunity present itself. If the object of these parties was to lead the appellant into a false position and obtain a photograph which would place him in a false light before the jury, their conduct was reprehensible, saying nothing of the conduct of a young woman who would voluntarily place herself in such a position, or become a party to such a scheme. If, on the other hand, their only object was to obtain a photograph of the appellant in a position in which he voluntarily placed himself, and there was no intent to deceive or mislead the jury, their acts would fall far short of a conspiracy to fabricate testimony; and this was in substance the charge of the court.

Many errors are assigned on the admission and exclusion of testimony, but the length of this opinion forbids us to consider such assignments in detail. Nearly all the assignments relate to the exclusion of evidence on the cross-examination of the nephew of the appellant, and the exclusion of evidence tending to impeach him. It appears in testimony that this witness manifested an unusual interest in the prosecution of this case. Aside from his efforts to obtain the photograph as above set forth, he admitted that he put in at least half his time for several months in looking up evidence

in the case. He was bound to the appellant by ties of kindred, and owed the prosecuting witness no duty of protection other than any other citizen. His conduct was unnatural, to say the least, and a very wide latitude should have been allowed in his cross-examination, and the appellant should have been permitted to impeach his testimony as to any matter bearing directly upon the case. The latitude allowed on cross-examination rests largely in the discretion of the trial court, and we are not prepared to say that any error was committed in this regard; but we make these observations in view of a new trial that must be granted on other grounds.

The appellant finally contends that the evidence was wholly insufficient to warrant a conviction; that the jury should have been directed to return a verdict of not guilty, and that this court should now direct his discharge. No useful purpose would be subserved by a review of the testimony in this case. We have considered it fully, and are satisfied that the record does not call for or warrant any such action on our part.

For the errors above discussed, the judgment is reversed and a new trial ordered.

MOUNT, C. J., HADLEY, DUNBAR, CROW, and ROOT, JJ., concur.