## DETERMINATION AS TO CAUSE OF DEATH.

Court of Appeals for Brown County.

SARAH E. ARMSTRONG v. THE TRAVELERS INSURANCE CO.

Decided, December, 1914.

*Accident Insurance—Ascertainment . of Cause of Death of Insured—
Autopsy Incompetent as Substantive Evidence—Rule as to Bur-
of Proof in Accident Insurance Different from that in Other Classes
of Insurance—Application of the Three-fourths Jury Law—Charge
of Court.*

1. The right to sue in the instant case did not accrue until three
months after submission of proofs of death, which was subse-
quent to the going into effect of the act providing for the return
of a verdict by three-fourths of the members of the jury, and the
provisions of that act were therefore applicable to the case.
2. An autopsy paper, signed by the physicians making the *post mortem*
examination, is not admissible as substantive evidence, where the
signatories had not been placed under oath and the privilege of
cross-examination was not accorded; but such a paper may be
used for the purpose of refreshing the memory of witnesses.
3. In an action involving the cause of death of one who fell into the
Ohio river in February, it is error to refuse to give special charges
because of the assumption incorporated into them that the water
was cold, if there was some evidence tending to prove that fact.
4. Under the policy in suit, where the only issue is as to whether the
death of the insured resulted from external, violent or accidental
means, the burden is upon the plaintiff to show affirmatively that
it was from one of the causes specified; and the fact that the de-
fense alleges that death resulted from disease does not affect the
rule as to the burden of proof.
5. A judgment will not be reversed for technical errors, where it
clearly appears from the evidence that the jury could have reached
no other conclusion than the one incorporated in their verdict.

*E. R. Roettinger, Chambers Baird* and *E. R. Young,* for
plaintiff in error.
*C. D. Robertson* and *J. W. Bagby,* contra.

Error to the Court of Common Pleas of Brown County.

Suit was brought in the Court of Common Pleas of Brown County upon a policy of insurance issued to one William H. Armstrong and payable, in the event of his death, to his wife, Sarah E. Armstrong, the plaintiff in the action.

The petition alleges that, for the consideration of $7.50 as a premium, the Travelers Insurance Company issued to said Armstrong its policy of insurance for the period of six months, and promised to pay the principal sum of said policy to his surviving wife in case the said William H. Armstrong should come to his death by external, violent and accidental means.

The petition alleges that, during the life of the policy, on the 27th day of February, 1913, the insured "came to his death" by external, violent and accidental means, to-wit: by drowning; that prior to the time of his death he had fully performed all of the conditions of said policy on his part to be performed; that on the 27th day of February, 1913, she notified the company of his death, and later, to-wit, on the 18th day of March, 1913, she filed with the company formal proofs of death.

The policy of insurance is attached to the petition, and judgment is asked against the defendant company for the principal sum claimed to be due, with interest from the date of filing the proofs of death.

The defendant answered, denying that William H. Armstrong came to his death by external, violent and accidental means, to-wit, by drowning, and specifically alleges that the cause of death was not within the scope of the insurance contract; that said contract provided for indemnity only from injuries resulting from external, violent and accidental means; and further pleading the provision of the policy which provides:

"This insurance shall not cover * * * death * * * resulting wholly or partly, directly or indirectly, from * * * disease in any form, either as cause or effect."

That, in fact, the death of William H. Armstrong was caused by a disease, or diseases, either wholly or partly, directly or indirectly, and specifically naming the diseases which were alleged to be the cause, or causes, of his death.

The reply denied that the death of Armstrong was caused by the disease, or diseases, named in the answer or that such diseases contributed to the death of the deceased.

JONES (Thomas A.), J.; WALTERS, J., and SAYRE, J., concur.

The jury returned a verdict, on the issues joined, in favor of the defendant. This verdict was signed and concurred in by eleven of the twelve jurors.

The court, in its general charge to the jury, had said that a verdict might be returned by three-fourths of the members of the jury, or more.

The contention is now made by the plaintiff in error that this action of the court was erroneous; that the amended jury law did not apply to the case at bar and the verdict should have been unanimous.

The act (103 O. L., 11) providing for a verdict upon the concurrence of three-fourths, or more, of the jury was passed Febuary 6, 1913, approved by the Governor, February 12, 1913, and became effective as a law on May 14, 1913.

This amending act did not expressly provide that existing causes of action should be affected thereby.

Section 26, General Code, provides:

"Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed, *nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act.*"

This action was not begun until September 15, 1913, and was therefore not a pending action when the act became effective.

The contention of plaintiff below is, that she had an existing cause of action which did not become amenable to Section 26, General Code, because of the fact that it arose and accrued to her prior to the time when the act became effective. The conten-

tion of her counsel is, that since Armstrong died on the 27th
day of February, 1913, an existing cause of action accrued to
plaintiff below, upon the policy, immediately upon the death of
her husband.

While the death of Armstrong occurred February 27, 1913,
there was a provision in the contract of insurance providing
that no legal proceedings, for recovery under the policy, should
be brought within three months after the receipt of the proofs
of death.

Since the proofs of death were not made until March 18, 1913,
a right of action, upon the policy, did not accrue to plaintiff
until three months thereafter or until June 18, 1913.  She had
no existing cause of action until that time.

A cause of action does not accrue until a breach of the contract
is made and a right to sue thereupon exists.

This definition of ''cause of action'' is discussed by Davis, J.,
in *Railroad Co.* v. *Hollenberger*, 76 O. S., 177-182.

The case decided by Kinkead, J., *Trust Co.* v. *Coal Co.*, 16
N.P.(N.S.), 273, is consistent with this view, as the right to
sue in that case did not accrue until the notes became due, which
was in March and April, 1913, and before the act became effec-
tive.

In this case, under the contract of insurance, the right to sue,
or the cause of action, did not accrue to the plaintiff below until
three months after the submission of proofs of death.

II.  The facts in this record disclose that the deceased, Wil-
liam H. Armstrong, about eight o'clock on the morning of his
death, went aboard a ferry-boat at Ripley, O., for the purpose
of crossing to the Kentucky side.  Just before the ferry-boat
reached the Kentucky side the last seen of the decedent was
when he was in the ladies' cabin of the boat and about to enter
the toilet room connected therewith.  He had started from home
in apparently good health.  No eye-witness saw the accident, if
accident there was, but it appears from the evidence that from
three to five minutes after the ferry-boat had cast off from the
Kentucky shore Armstrong was seen in the water, floating with
his face submerged in the water but with his head and shoulders
unsubmerged.  The captain of the boat went to his succor and

brought him aboard the boat, where an attempt was made to resuscitate him, without avail. The boat immediately crossed over to the Ohio side, where physicians were summoned to attend him. On the afternoon of that day he was embalmed, and later buried. Seventeen days later, upon initiative of the defendant below, the body was exhumed for the purpose of *post mortem* examination. An autopsy was held in the presence of eight physicians and four laymen, each of whom signed the findings made by the autopsy.

Upon the trial of the case all of the physicians who were present and signed the autopsy, except one, testified; and two of the laymen who were present and signed the autopsy also testified in the case. One Doctor Carothers and two laymen, viz., B. E. Waite and J. E. Morehead, were not witnesses at the trial.

Doctor Foertmeyer, the physician who presided over the autopsy, was called by defendant as a witness. In his examination in chief he was asked in detail as to the examination he made of the vital organs, refreshed his recollection by the use of the autopsy paper, and in connection with his examination in chief counsel for defendant offered and the court permitted the autopsy paper to be admitted in evidence.

In the opinion of this court, the action of the court below in this regard was erroneous. The autopsy should not have been admitted as substantive evidence in the case. It purported to have been signed by at least three persons who were not present as witnesses at the trial, and therefore the plaintiff below was denied the privilege of cross-examination of these men, under oath.

It has been held that a *post mortem* examination made by a coroner is a semi-judicial proceeding and can not be used as substantive evidence to prove the cause of death. It would seem to us that it would be a greater abuse of the rule of evidence to admit a paper of this character to be introduced as substantive evidence, where the signatories to the paper had not been placed under oath at the time and the privilege of cross-examination, as in this case, denied the plaintiff.

While we adhere to this as the proper rule of evidence, in view of the record made in this case, we are not inclined to hold

that the action of the court was so prejudicial as to require a reversal.

This autopsy was made for the purpose of obtaining the expert knowledge and opinion of the physicians present. So far as the laymen were concerned, it would have been of little value. Of the physicians who were present and signed the autopsy all testified except one, Doctor Carothers. The autopsy paper had been used, throughout the case, in connection with the evidence of the expert witnesses, to show the physical condition of the deceased and to ascertain the cause of his death. Every one of the seven physicians went into a detailed explanation of the autopsy, and testified in detail as to the matters contained in the paper.

It would seem to us that, under this state of facts, there could be no serious prejudice to the plaintiff below in allowing the autopsy to be introduced as evidence in the case.

The claim of counsel for defendant is, that it was only used in connection with the examination of Doctor Foertmeyer, and that it was proper for the court to admit the paper, in view of that fact and in the further view that the matters contained therein had been generously testified to by other witnesses.

While the paper could be used in that connection and for the purpose of refreshing the memory of the witnesses, we do not think that it should have been admitted as substantive evidence, as the court permitted in this case.

III. It appears from the record that before argument of counsel the plaintiff below requested special charges No. 2, 5 and 7 be given to the jury.

This request was refused by the court, and such refusal is assigned as error in this court.

It is said by counsel in this case that the court refused to give these three special charges because of the fact that an assumption had been incorporated into each of the charges that the water was "cold water."

We are unable to agree with counsel for defendant in error that the charges should have been refused upon that ground. The only evidence in the case, in connection with that subject, is that of Captain Robert Corbin, the owner of the ferry-boat. He testified that the water was cold, and there is no contradiction of

that fact in the entire testimony.  In addition to that, it may be held to be a matter of common knowledge that in the month of February the water of the Ohio river would be cold.

While we hold the refusal to give these special charges was technically erroneous, again we say that, in view of the entire evidence disclosed by this record, we do not feel inclined to reverse the judgment because of this refusal, for reasons that will appear later in this opinion.

IV.  The court also refused to give plaintiff's special charge No. 4, requested before argument.  That charge is as follows:

"The defendant, by its answer, denies that Mr. Armstrong died as alleged in the petition, and the answer alleges further that the death of Mr. Armstrong was due to certain diseases which are specified in the answer.

"The burden of proof is upon the defendant to show, by a preponderance of the evidence, that the death of Mr. Armstrong was caused by the diseases so specified, or any one of them."

In the general charge the court placed the burden of proof upon the plaintiff to prove, by a preponderance of the evidence, that William H. Armstrong came to his death through external, violent and accidental means; and in the general charge the court also placed the burden of proof upon the defendant to prove, by a preponderance of the evidence, that the death of said Armstrong was caused by, or resulted wholly or partly from disease, or diseases, with which he was afflicted.

It is a little difficult to understand why the court placed the burden upon the defendant to show that death resulted from disease, in his general charge, and refused to do this before argument, when requested by plaintiff in said special charge.  However that may be, we are of the opinion that the law as to the burden of proof, given to the jury by the court in the general charge and which was asked by the plaintiff in the special charge, was erroneous.

The only issue in this case was:  What was the cause of death? It was incumbent upon the plaintiff to show, before she was entitled to recover, that the deceased, William H. Armstrong, came to his death through external, violent and accidental

means.   No recovery could be had under the policy unless that showing was made.   The petition alleged that fact as a predicate for recovery.   This was denied by the answer.   In our judgment, the defendant below could have met that issue, under a general denial, by showing that the death resulted from any cause other than external, violent or accidental means.

If the defendant below, in the introduction of its evidence, had produced sufficient proof to countervail the case made by the plaintiff upon that point, plaintiff would fail.   It was not necessary for the defendant to show, by a preponderance of the evidence, that death resulted from one of the diseases specified in the answer.   It was sufficient to show, in order to meet the case made in the petition, such proof of facts and circumstances as would break down or countervail the case made by plaintiff.

The proper rule of law is laid down in the third proposition of the syllabus in *Klunk* v. *Railway Co.*, 74 O. S., 125:

"The rule is that he who affirms must prove, and when the whole of the evidence upon the issue involved leaves the case in equipoise, the party affirming must fail."

To the same effect is *Dykeman* v. *Johnson*, 83 O. S., 126.

Counsel for plaintiff in error have cited authorities opposed to this view:   *Casualty Co.* v. *Bird*, 18 C. C., 488.

In the foregoing case we are unable to agree with the conclusion reached by that court.   They seem to have applied the rule of burden of proof which exists in actions brought upon an ordinary life or fire insurance policy to actions based upon accident policies, such as we have here.

We are able to see quite a distinction between those cases and the one at bar.   In actions based upon ordinary life policies when the death of the insured has been proven, recovery can only be avoided by the defendant taking upon itself the burden of showing, by way of an affirmative defense, that the death resulted from one of the exceptions named in the policy.   In those cases where fraud, misrepresentation or breach of warranty has been pleaded in order to avoid the policy, the burden, of course, is cast upon the defendant.

The sole issue in this case was as to what was the cause of death. The plaintiff was required to prove affirmatively that death resulted through external, violent and accidental means.

The case of *Hanner, Admr.,* v. *Aetna Life Insurance Co.,* 49 Bull., 140, has been cited to us as holding an opposite view. That case was later affirmed by the Supreme Court. It will be observed that this suit was brought upon a life insurance policy. Plaintiff in that case, upon showing the death of the insured, could have rested his case. He was not required to prove, under the policy, that the cause of death resulted from external, violent and accidental means.

It was not so here. It was incumbent, in the case at bar, to show not only the death of the insured, but to show affirmatively that the death resulted through external, violent and accidental means.

That this is the proper rule as to the burden of proof is held by the Supreme Court of Illinois in *Casualty Company* v. *Weise,* 55 N. E., 541. That case holds that, in a policy such as this, suicide may be shown under the general issue, and the burden remains upon the plaintiff to show that death resulted from external causes.

V. Other criticisms of the general charge have been made in the brief of counsel for plaintiff in error.

It is insisted, among other things, that the trial court should have defined "disease" in its charge to the jury.

It is sufficient to say, in answer to that contention, that no request was made by counsel for such definition. Besides, the jury found by the special interrogatories that William H. Armstrong's heart, liver and kidneys were in a diseased condition at the time of his death. In addition to this, it may be said that there is no contradiction of the testimony given by the seven expert witnesses in this case, that these organs of the decedent were badly diseased at the time of his death.

While we have held in this opinion that the autopsy should not have been admitted by the trial court as substantive evidence, that special charges No. 2, 5 and 7 should have been given to the jury, and that the action of the trial court in this respect

was technically erroneous, we are unable to come to the conclusion that this judgment should be reversed because of that fact.

We have read this entire record over very carefully; and, in our judgment, the jury could have come to no other conclusion than it did. Seven of the physicians who performed the autopsy testified as witnesses in the case, and their testimony has not been contradicted by a single person. They made specific detailed examination of the vital organs of the insured and found them badly diseased, and in their official report, signed by them, found that the cause of his death was acute dilation of the heart, aortic stenosis, mitral insufficiency, coronary sclerosis, cirrhosis of the liver and chronic Bright's disease. In addition to the report itself, six of these physicians, upon the witness stand, testified positively that not only were these physicial conditions found at the *post mortem* examination but that Armstrong came to his death, not by drowning, but as a result of these diseases.

Doctor Foertmeyer, one of the physicians, was from Cincinnati, Doctor Wilson, another physician, represented the Travelers Insurance Company and lived at Hartford, Connecticut; the other four physicians lived at Ripley, Ohio, the home of the insured. It is true that one of the Ripley physicians, the elder Tyler, attempted to escape the result of his action when present as a signer of the autopsy paper. But we attach more importance to the findings signed by him at that time than to the evidence given on the trial.

As has been stated, this testimony has not been contradicted by a single witness. The younger Doctor Tyler was upon the witness stand and testified to the fact that he saw the deceased immediately after he was taken from the boat and that his skin was in a synotic or bluish condition and that there was froth or mucous appearance at the region of the mouth, and that while he was on the embalming table water came from the larynx when the undertaker pressed the deceased's chest. However, young Doctor Tyler did not express an opinion that the cause of decedent's death was drowning; he expressed no opinion upon this subject.

There was other testimony, showing that the insured had been a man of active habits, and that the jury might have found that death may not have resulted from disease. But against this we have the positive testimony of all these physicians who made the *post mortem* examination, and their positive and direct statement that not only were these vital organs seriously affected, but that, in fact his death was not causeed by drowning but by the various diseases found at the autopsy.

To reverse this case would require the throwing aside of all the expert testimony upon the subject. The autopsy was made apparently under such conditions and the testimony appears to be so fairly given by these witnesses, that we can do nothing else but give it effect. It has not been disputed anywhere in the record. It simply overwhelms the case made by the plaintiff.

Therefore, in our opinion, the jury could have found no other way than it did, in view of the evidence disclosed; and we feel that we could not certify that substantial justice has not been done in this case, under the provisions of Section 11364, G. C., were we to reverse the judgment.

The judgment of the trial court will be affirmed.