

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39057-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS EDWARD MILLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Nicholas Miller appeals from his convictions and sentence for two counts of first degree rape of a child, one count of first degree child molestation, one count of second degree rape of a child, and one count of second degree child molestation. He argues: (1) defense counsel was ineffective for failing to object to the admission of prior statements from KO, the victim, under the "fact-of-complaint" rule because the statements were not made close in time to the alleged abuse, and (2) the sentencing court did not apply the proper standard when it imposed conditions of community custody that violated his fundamental right to parent.

We conclude that Miller's counsel was not ineffective but remand for reconsideration of the community custody condition related to contact with his own children.

BACKGROUND

In 2014, Niki Osborn and Nicholas Miller began dating. Shortly thereafter, Miller moved in with Osborn and started watching her kids while she was at work. In 2015, Miller started sexually abusing KO, Osborn's daughter. The abuse continued for several years and occurred two to five days a week.

Miller and Osborn broke up in 2018, and Miller moved out. After they broke up, beginning in May 2019, Miller would come over and stay at Osborn's house. KO testified that the last abusive act occurred at the house where Miller was staying in the summer of 2019.[1]

In December 2019, Osborn experienced a stroke, and KO moved in with her father full time. Some time later, when Osborn was released from the hospital, Miller again moved in with her and KO, and Osborn and Miller got engaged. Following their engagement, KO revealed Miller's sexual abuse to her aunt, and police became involved.

The State charged Miller with two counts of first degree rape of a child, one count of first degree child molestation, one count of second degree rape of a child, and one count of second degree child molestation. The charging period for the second degree

---

[1] KO testified that this act occurred when Miller was living with his friend and KO and her family were living in the "first Thayer house" and the abuse occurred during the summer because she remembered wearing shorts. KO's mother testified that they lived in the first Thayer house in 2019.

rape of a child and second degree child molestation charges ranged from December 2018 to February 2020.

Prior to trial, the State moved in limine to admit prior statements KO had made when reporting the sexual assault to her stepsister and friend, TG and MG respectively, under the fact-of-complaint rule. The State also noted that KO's statements to TG and MG would be admissible as prior consistent statements if Miller alleged KO was lying. Defense counsel did not object to these motions, and the trial court granted them.

The case proceeded to a jury trial. During opening statements, defense counsel argued that KO had a motive to lie about Miller abusing her because she did not get along with her mom and did not like Miller because he was the "enforcer." Rep. of Proc. (RP) at 337-39. Defense counsel claimed that the rape accusations against Miller were KO's "easy way out." RP at 338.

TG, KO's stepsister, testified. She said that KO had twice shared "something about sexual abuse" with her. RP at 641. The first time was during the summer of 2019 and the second time was in January 2020. The first time KO talked to TG, she followed it up by saying that she was joking.

MG, a friend of KO, also testified. She explained that, in the summer of 2019, KO had told her that somebody had been sexually assaulting her repeatedly and had asked MG not to tell anyone. But KO subsequently told MG that "it was a game." RP at 769.

KO testified that she wrote a list of reasons why she did not want to live with her mother anymore and showed it to her aunt in February 2020. Later that same day, she told her aunt that Miller had been assaulting her.

The State also elicited testimony from KO that she had written an outline of why she reported the assaults and what had happened in a journal prior to a forensic interview to "keep[] [her] thoughts straight." RP at 751-52. Defense counsel cross-examined KO about the specific contents of the journal including whether she had made entries about sexual abuse that had occurred while she was in third, fourth, or fifth grade. On redirect, without objection from defense counsel, the State then admitted pages from the journal as an exhibit.

The jury found Miller guilty on all charges.

At sentencing, although the crime-related prohibitions were not specifically addressed by either the State or defense counsel, the court imposed conditions of community custody that restricted Miller from having direct or indirect conduct with minors under the age of 16 and preventing him from holding any position of authority or trust involving minors under the age of 16. Miller did not object to either of these conditions.

Miller appeals.

ANALYSIS

1.   INEFFECTIVE ASSISTANCE OF COUNSEL

Miller argues that defense counsel was ineffective for failing to object to prior statements by KO under the fact-of-complaint rule.  He contends that an objection would have been sustained because the prior statements were inadmissible.  We disagree.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018).  A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007).  Claims of ineffective assistance of counsel are reviewed de novo.  *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing (1) that his counsel's performance "fell below an objective standard of reasonableness based on consideration of all the circumstances;" and, if so, (2) that "there is a reasonable probability that, except for counsel's [poor performance], the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  "If either element . . . is not satisfied, the inquiry ends."  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation." *McFarland*, 127 Wn.2d at 335. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

"When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. Whether to object or not is a "classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). In the context of objections, courts presume "that the failure to object was the product of legitimate trial strategy." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007).

Moreover, in order to show deficient performance on a claim of ineffective assistance of "counsel [based] on . . . failure to object, then "'the defendant must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id.* (quoting *Crow*, 8 Wn. App. 2d at 508).

Miller argues that his defense counsel was ineffective for failing to object to the admission of prior statements made by KO to MG and TG under the fact-of-complaint doctrine.[2]

"The fact-of-complaint or 'hue and cry' doctrine is a case law exception to the hearsay rule allowing the State to introduce evidence in its case in chief that a rape victim has made a timely complaint." *State v. DeBolt*, 61 Wn. App. 58, 63, 808 P.2d 794 (1991). "Details of the complaint and the identity of the offender are not permitted." *Id*. The testimony is only admissible to rebut an inference that a complaining witness was silent after an attack and not admissible to prove the truth of the matter asserted. *State v. Martinez*, 196 Wn.2d 605, 611, 476 P.3d 189 (2020).

To be admissible under the fact-of-complaint rule, the complaint must be timely made. *Id.* at 614. "A complaint is timely if it is made when there is an 'opportunity to complain.'" *Martinez*, 196 Wn.2d at 614 (quoting *State v. Griffin*, 43 Wn. 591, 597, 86 P. 951 (1906)) (internal quotation marks omitted). "We leave it in the able hands of the trial court to determine what constitutes a timely complaint based on the surrounding

---

[2] Although he does not assign error to it, Miller also appears to argue that defense counsel was ineffective for failing to object to the admission of an excerpt from KO's journal under the fact-of-complaint rule. However, the State did not request to admit the excerpt under the fact-of-complaint rule but rather it was admitted on the State's redirect of KO after defense counsel opened the door to it by asking her specific questions about it on cross examination. Moreover, as this exhibit was not designated as part of the record on appeal, the contents of the journal are unknown. Accordingly, we decline to address this issue.

circumstances." *Id.* at 614-15 (trial court did not abuse its discretion in finding

statements admissible under fact-of-complaint doctrine where child was living with

abuser and abuse was still ongoing, even though reports were made outside charging

period); *State v. Ackerman*, 90 Wn. App. 477, 480-82, 953 P.2d 816 (1998) (trial court

did not abuse its discretion in finding prior statement admissible under fact-of-complaint

where minor made statements reporting abuse both during and shortly after charging

period).

TG and MG both testified about complaints made by KO that did not identify the

offender or give details of the complaint.  Still, Miller contends that the complaints were

inadmissible because the record fails to establish that KO's complaints were timely made.

We reject this argument for several reasons.

First, Miller cannot overcome the lack of objection by arguing that the record is

undeveloped and did not support admission of the evidence.  The purpose of an objection

is to correct an error, prevent it from reoccurring, and to prevent abuse of the appellate

process.  *State v. Emery*, 174 Wn.2d 741, 761-62, 278 P.3d 653 (2012).  Had Miller

objected to the evidence, the State may have supplemented the record with additional

facts to show the temporal relation between the complaint and the abuse.

In addition, Miller does not demonstrate that an objection would have been

sustained.  TG and MG testified that KO disclosed a generalized complaint of sexual

abuse in the summer of 2019.  KO testified that Miller's last act of abuse occurred in the

summer of 2019. The trial court has discretion to decide if a complaint introduced under this hearsay exception is timely. On this record, Miller cannot show that an objection would have been sustained.

Next, as the State points out, KO's statements were also admissible as prior consistent statements under ER 801(d)(1)(ii). The rule provides that a statement is not inadmissible as hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." During opening statements, defense counsel attacked KO's credibility and argued she had a motive to lie, mainly that she did not want to continue living with her mother, and that this motive was evidenced by the list she presented to her aunt in February 2020. KO's statements to both TG and MG were made prior to her presenting the list to her aunt and prior to her bringing the abuse accusations to her aunt. Further, though she said she was joking and referred to her statements as a game, they were still consistent with the accusations she made in February 2020. Given defense counsel's attack on her credibility, these statements were admissible as prior consistent statements.

Recognizing that the complaints to TG and MG would likely be admitted under one or both hearsay exceptions, defense counsel's failure to object may have been strategic. Both TG and MG testified that KO admitted that her complaint was a joke or a

game.  These comments by KO tend to discredit later complaints that the allegations are

true.  Thus, it is possible that defense counsel wanted the jury to hear these comments.

In sum, Miller has failed to demonstrate his counsel was deficient for failing to

object to complaints made by KO to TG and MG.  Because Miller fails to show deficient

performance, we need not address the issue of prejudice.

2.     CONDITIONS OF COMMUNITY CUSTODY

Miller argues that the sentencing court abused its discretion in imposing

conditions of community custody that deprive him of relationships with his biological

children without considering the necessity of the conditions.  We agree.

Pursuant to RCW 9.94A.505(9), a trial court may impose "crime-related

prohibitions" as a sentencing condition.  *In re Pers. Restraint of Rainey*, 168 Wn.2d 367,

374, 229 P.3d 686 (2010).  Generally, a trial court's imposition of a sentencing condition

is reviewed for an abuse of discretion.  *State v. Torres*, 198 Wn. App. 685, 689, 393 P.3d

894 (2017).  However, "we more carefully review conditions that interfere with a

fundamental constitutional right, such as the fundamental right to the care, custody, and

companionship of one's children." *Rainey*, 168 Wn.2d at 374 (internal citation omitted).

"Sentencing conditions that interfere with a fundamental right must be sensitively

imposed so that they are 'reasonably necessary to accomplish the essential needs of the

State and public order.'" *Howard*, 182 Wn. App. at 101 (quoting *State v. Warren*, 165

Wn.2d 17, 32, 195 P.3d 940 (2008)).  A court can impose a condition on a criminal

defendant that restricts the fundamental right to parent as long as "the condition is reasonably necessary to prevent harm to the child[ ]." *State v. Ancira*, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001).

Whether "a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny." *Rainey*, 168 Wn.2d at 374. However, given the fact-specific nature of imposing crime-related prohibitions and the fact that they are largely based on the sentencing court's appraisal of the trial and defendant, abuse of discretion is still the proper standard of review. *Rainey*, 168 Wn.2d at 374-75. "A court abuses its discretion if, when imposing a crime-related prohibition, it applies the wrong legal standard." *Rainey*, 168 Wn.2d at 375.

Miller challenges the community custody condition precluding him from having any direct or indirect contact with minors under the age of 16. The sentencing court did not consider whether the condition was reasonably necessary to protect Miller's children from harm. The State concedes that this community custody condition is improper and suggests it be amended to allow Miller to have supervised contact with children. We accept the State's concession in part, but we remand for the trial court to reconsider the condition in light of the proper standard.

Miller also objects to the condition of community custody that precludes him from "hold[ing] any position of authority or trust involving minors under the age of 16." Clerk's Papers at 154. The State argues that such a condition is justified because it

11

allows Miller to parent his children but restricts him from assuming a position of authority or trust over any minor. However, this argument ignores the fact that the fundamental right to parent includes the right to care, custody, and companionship of one's children, which inherently creates a position of authority or trust. Consequently, this condition restricts Miller's fundamental right to parent. As the sentencing court did not consider whether the condition was reasonably necessary to protect Miller's children from harm, we remand for the trial court to consider the condition in light of the correct legal standard.

We affirm Miller's conviction but remand for the trial court to reconsider the community custody condition related to his own children under the proper standard. Unpublished. A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

12