# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                 Respondent,

      v.

BRANDON DENNIS COMBS,

                 Appellant.

No. 85277-9-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — A jury convicted Brandon Combs of three counts of rape in the second degree and one count of child molestation in the second degree. On appeal, Combs argues (1) the trial court abused its discretion in admitting statements under the "hue and cry" or "fact of complaint" doctrine, (2) the prosecutor committed misconduct, and (3) the victim penalty assessment (VPA) and DNA collection fee should be stricken.

We remand to strike the VPA and DNA collection fee. We otherwise affirm.

I

In 2018, H.M.'s mother was dating Kevin Combs, the uncle of Brandon Combs. H.M. lived with Kevin,[1] and Combs lived with his dad around the corner from H.M.

---

[1] First names are used to avoid confusion with the appellant. No disrespect is intended.

During summer 2018, Combs, H.M., and other children in the neighborhood would play in an open field near their homes. At the time, Combs was 19 years old and H.M. was 13 years old. Combs began making inappropriate comments about H.M.'s body to her when no other people were around.

H.M. described multiple incidents where Combs touched her inappropriately including: touching her breasts, putting his penis in her mouth, and inserting his penis into her vagina. H.M. stated that Combs knew she was only 13 years old. After each incident, Combs told H.M. not to tell anyone.

H.M.'s mother and Kevin broke up toward the end of summer 2018. H.M. and her mother moved in with H.M.'s grandmother in Issaquah. After school started, H.M. disclosed to her friend K.W. that she had been raped. Around Christmas 2018, H.M. disclosed to her grandmother and mother that she had been raped.

On January 16, 2019, police arrived at H.M.'s house for an unrelated incident. H.M. approached the officer and asked if she could report a sexual assault.

The State charged Combs with three counts of rape in the second degree and one count of child molestation in the second degree.

Before trial, Combs sought to exclude statements H.M. made to K.W., her mother, and grandmother that she was sexually assaulted. Combs argued the statements were untimely and thus inadmissible under the fact of complaint doctrine. Combs argued the statements were untimely because H.M. did not make the statements until four months after she last was around Combs. The trial court ruled:

> I think based on everything I have before me the Court reluctantly acknowledges that this antiquated rule, which Justice Gordon McCloud bemoans in her dissent on [State v. Martinez, 196 Wn.2d 605, 476 P.3d 189 (2020)], the Court is going to rule the actual—the fact that it was

-2-

admitted with zero details the Court will again reluctantly agree that the law would support its admission given the timing.

I understand and appreciate the defense's concerns under [State v. Chenoweth, 188 Wn. App. 521, 354 P.3d 13 (2015)]. I do think there is enough in Martinez to allow for that to come in. So the only things that will come in are the disclosure of the fact that she believes she had suffered a sexual assault, period. There is no name, there is no detail, there is nothing to describe the actual events themselves. That would be it.

At trial, K.W. testified that H.M. disclosed to her that H.M. was raped. H.M.'s grandmother testified that H.M. told her that she was raped. H.M.'s mother also testified that H.M. disclosed to her that she had been raped. In accordance with the court's ruling, the witnesses testified only that H.M. disclosed she had been raped but did not testify to any name or detail about the assaults.

The jury found Combs guilty on all counts. The court sentenced Combs to an indeterminate sentence with a minimum of 144 months.

Combs appeals.

II

Combs argues the trial court abused its discretion in admitting H.M.'s statements to K.W., her mom, and her grandmother under the fact of complaint doctrine because they were untimely. We disagree.[2]

The fact of complaint doctrine, also known as hue and cry doctrine, is a case law exception to the prohibition on hearsay that permits the introduction of evidence that the alleged victim made a complaint to someone after the assault. State v. DeBolt, 61 Wn.

---

[2] Combs urges this court to abandon the fact of complaint doctrine. But our Supreme Court recently rejected an attempt to abandon to the doctrine in Martinez, 196 Wn.2d at 614 ("Because the fact of complaint doctrine protects victims and provides an important supplement to the current rules of evidence, we decline to abandon the doctrine."). For that reason, we do not address Combs's argument that the doctrine should be abandoned.

App. 58, 63, 808 P.2d 794 (1991). The doctrine is limited and only allows evidence to demonstrate that the victim reported to someone in a timely matter, but the witness cannot disclose details about the assault. Martinez, 196 Wn.2d at 611. The purpose of doctrine is to eliminate any bias that jurors may have that "real" victims report promptly. Martinez, 196 Wn.2d at 611.

"A complaint is timely if it is made when there is an 'opportunity to complain.'" Martinez, 196 Wn.2d at 614 (internal quotation marks omitted) (quoting State v. Griffin, 43 Wash. 591, 597, 86 P. 951 (1906)). We "leave it in the able hands of the trial court to determine what constitutes a timely complaint based on surrounding circumstances." Martinez, 196 Wn.2d at 615.

We review the trial court's admission of evidence under the fact of complaint doctrine under an abuse of discretion standard. Martinez, 196 Wn.2d at 614. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Combs argues that H.M.'s statements were not timely because she did not make them until four months after the assault.

Contrary to Combs's argument, timeliness under the fact of complaint doctrine is not strictly construed. Rather, the Supreme Court has stated that the trial court is in the best position to determine whether a complaint was timely made, and "[t]rial judges have discretion to admit evidence explaining why a victim waited to report facts of sexual violence, and other circumstances, in deciding whether or not to admit fact of the

complaint testimony." Martinez, 196 Wn.2d at 615. There is thus no bright line rule for deciding whether a statement is timely under the doctrine.

Here, H.M. made the statements around four months after the assaults occurred. H.M. testified that she was uncomfortable talking about what happened. H.M. also began self-harming after the assaults. At the same time, her mother and Kevin broke up and H.M. moved to a new city. H.M. eventually started at a new school and got a fresh start. Once she got comfortable in her new living situation and processed what happened to her, she eventually disclosed to family and friends.

As the court outlined in Martinez, the inquiry of timeliness does not turn on a predetermined amount of time. 196 Wn.2d at 614. Rather, it is an examination of the facts and surrounding circumstances and when the victim had an opportunity to complain. Martinez, 196 Wn.2d at 614. The trial court carefully considered these circumstances and determined the statements were timely for the purpose of the fact of complaint doctrine.

Because of the significant discretion given to the trial court in considering the circumstances and admitting evidence under the fact of complaint doctrine, we hold that H.M.'s statements were timely and the trial court did not abuse its discretion in admitting this evidence.[3]

---

[3] Even if the admission of the statements was error, any error was harmless under the nonconstitutional harmless error standard. State v. Rocha, 21 Wn. App. 2d 26, 34, 504 P.3d 233 (2022) (erroneous admission of evidence in violation of an evidentiary rule is reviewed under nonconstitutional harmless error analysis). Each witness merely answered a single "yes" to whether H.M. disclosed to them that she was raped. The State's case did not focus on these disclosures but rather focused on H.M.'s behavior changes after the assaults. Combs cannot demonstrate there is a reasonable probability that the outcome of the trial would have been different without these statements.

III

Combs argues that the prosecutor committed misconduct in closing arguments when he told the jury it must convict if it thought H.M. was telling the truth. We disagree.

To prevail on a claim of prosecutorial misconduct, the defendant must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

When there is a failure to object to improper statements, it constitutes a waiver unless the statement is "so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury." Brown, 132 Wn.2d at 561. If the prejudice could have been cured by a jury instruction, but the defense did not request one, reversal is not required. State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994). "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." State v. Emery, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

Here, Combs failed to object to the prosecutor's closing argument, so his argument is waived unless he can show that the statements were so flagrant and ill

-6-

intentioned that no instruction could have cured the prejudice. Brown, 132 Wn.2d at 561. Combs argues the following portions of the State's closing argument were improper:

> And if you listen to that evidence, if you listen to her testimony, and you believe her, you're done. You've already found Mr. Combs guilty because you found that I met my burden on all five of those elements.
>
> . . . Because the instructions tell you that it's your job to look at the evidence, the testimony, and it's your job to decide what makes sense about it, who to believe and why.
> . . . .
> Whether or not, having heard all of the evidence, you can look at that and in light of all the evidence, do you believe [H.M.]? Because in Washington state if you look at all the evidence and you find the victim to be credible, if you believe them in light of that evidence, that's enough.
> . . . .
> And if you look at those and you find that you're uncomfortable it's not because of the nature of this case. It's because you believe that it happened. You would not be uncomfortable if you didn't think it happened. So keep in mind that when you deliberate.
> . . . .
> So is she lying? Let's talk about that.
>
> Why would she lie? They don't have a duty to prove motive, but I encourage you to look for one because there are two alternatives here. Either this was worth it for her to get this attention to cut herself multiple times, to drink bleach, to have nothing happen. Is that the attention she wanted to have, the friends that she told come to her at 13 and tell her it's her fault, to have to come in and tell a bunch of strangers about what happened knowing that I would have to stand here and argue that it's the truth what happened to her? Is that a motive to lie? Is that worth it for her? Because what's the alternative? If she's not lying because it happened.

Combs argues these statements impermissibly shifted the burden of proof. We disagree.

First, throughout closing arguments, the prosecutor repeated that the State had the burden to prove all the elements, and again in rebuttal, the prosecutor began with "I think Mr. Will and I really agree wholeheartedly on one thing in this case, and that's that

I absolutely bear the burden. Mr. Combs has no burden. He doesn't have anything to do in this case." After repeatedly emphasizing that the State bore the burden of proof, the prosecutor argued that if the jury believed H.M., the elements of the crime would be met. This is not an impermissible burden shift because the prosecutor did not suggest that Combs had any burden.

Second, a prosecutor has "wide latitude in drawing and expressing reasonable inferences from the evidence, including inferences about credibility." State v. Thompson, 169 Wn. App. 436, 496, 290 P.3d 996 (2012). The prosecutor was permitted to argue that H.M. had no motive to lie, particularly when the case hinged on credibility.

Lastly, Combs fails to show that the prosecutor's comments affected the verdict. Similarly, Combs fails to show any improper comment could not have been cured by an instruction. The instruction informed the jury that it was the jury's role to determine credibility, that the State had the burden of proof, and that the attorneys' statements were not evidence. Because Combs cannot demonstrate the prosecutor's comments were so flagrant and ill intentioned that they could not be cured by an instruction, his argument is waived.

For these reasons, we decline to reverse Combs's conviction on this basis.

IV

Combs argues this court should remand to strike the VPA and DNA collection fee. The State does not oppose.

In 2023, the legislature amended RCW 7.68.035 to prohibit courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch.

449, § 1. Our courts have held that recent amendments to statutes governing legal financial obligations apply to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

We remand to strike the VPA and DNA collection fee.

V

Combs asserts three more grounds for appeal in his statement of additional grounds. RAP 10.10. We address each in turn.

Combs first argues that it was improper for jury selection to be conducted over Zoom where potential jurors could hear other jurors' answers.

A trial court's ruling on the scope and content of jury selection will not be disturbed on appeal unless there was an abuse of discretion and the rights of the defendant have been substantially prejudiced. State v. Wade, 28 Wn. App. 2d 100, 534 P.3d 1221 (2023), review denied, 2 Wn.3d 1018, 542 P.3d 570 (2024).

Here, the trial court adopted reasonable voir dire procedures in light of the ongoing COVID-19 pandemic. See Wade, 28 Wn. App. 2d at 113 (holding the trial court did not abuse discretion in conducting voir dire over Zoom during the COVID-19 pandemic). And Combs offers no examples of any prejudice. Without more, we conclude the trial court did not abuse its discretion in conducting voir dire remotely.

Combs next argues there was insufficient evidence during trial to support a conviction. We disagree.

Due process requires that the State prove every element of a crime beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). To determine whether sufficient evidence supports a conviction, we must "view the

evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). The State's evidence is admitted as true, and circumstantial evidence is considered equally reliable as direct evidence. State v. Scanlan, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). And we defer to the fact finder's resolution of conflicting testimony and their evaluation of the evidence's persuasiveness. Homan, 181 Wn.2d at 106.

Here, viewing the evidence most favorable to the State, the evidence was sufficient for the jury to convict. H.M. detailed multiple incidents throughout summer 2018 where she was sexually assaulted by Combs. Additionally, three people testified that H.M. disclosed to them that she was raped and that her demeanor changed after that summer. A rational jury could have found the elements were met beyond a reasonable doubt.

Combs lastly argues he had ineffective assistance of counsel because his attorney failed to move for dismissal based on the lack of evidence.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant in a criminal proceeding is guaranteed the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate both (1) that counsel's representation fell below an objective standard of reasonableness and (2) resulting prejudice—a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d

322, 334-35, 899 P.2d 1251 (1995).  If a defendant fails to establish either element, the inquiry ends.  State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is a strong presumption that counsel's representation was effective. McFarland, 127 Wn.2d at 335.  To demonstrate deficient performance, a "defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel."  McFarland, 127 Wn.2d at 336.

Combs fails to establish deficient performance or resulting prejudice.

For the reasons above, we remand to strike the VPA and DNA collection fee. We otherwise affirm.

_____Mann, J._____

WE CONCUR:

_Chung, J._____          _Birk, J._____