WILLIAM E. STEVENS

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa October 11, 1895.*

1. APPEALS AND ERRORS—*admission of improper evidence—when reversible error.* The admission, upon a trial for assault with intent to rape, of the testimony of witnesses that the complainant told them that defendant had assaulted her, is reversible error in a close case.

2. EVIDENCE—*complaints by prosecutrix in prosecution for rape—how far admissible.* Witnesses to the fact of a complaint by a woman charging an assault with intent to rape to have been committed upon her, may state when, where and to whom such complaint was made, but cannot state the name of the person charged, nor any of the details of the transaction, as communicated by the prosecutrix.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. ARTHUR A. SMITH, Judge, presiding.

This is an indictment against plaintiff in error for assault with intent to commit rape upon one Philomena Berkins. The jury, upon the trial of the case, returned a verdict of guilty, and fixed the punishment at one year in the penitentiary. Motions for new trial and in arrest of judgment were overruled, and judgment was rendered upon the verdict. This writ of error is sued out for the purpose of reviewing such judgment. A motion was made before this court by plaintiff in error at the October term, 1894, that the writ of error be made a *supersedeas.* This motion was granted at that time, and plaintiff in error was then admitted to bail pending the consideration of the case here.

The offense is alleged to have been committed in Moline on Tuesday, the 22d day of August, 1893. The plaintiff in error is a man of family, fifty-four years of age, and, for fourteen years prior to his conviction, was engaged in the real estate and insurance business at Moline.

The prosecutrix is a married woman, the wife of one Martin Berkins.  She is more than thirty-five years old, and came to this country from Belgium on April 27, 1893.  She had lived at Ghent in Belgium, and was there divorced from her first husband.  She married her present husband, Martin Berkins, in Rock Island on June 6, 1893.  She says, that she had known Berkins ten years, and came to America to marry him.  Berkins was also a Belgian, born in 1861, and had lived in this country about two years at the time of the trial.  The prosecutrix admits, that she kept a saloon in Ghent alongside of a house of ill-fame; that she was twenty-five years old when she first kept a saloon, and, the last time she kept it, kept it fourteen months, and, five years before that, kept a saloon in connection with a lodging-house; and that she had no other business in Ghent besides keeping a saloon and lodging-house.  A witness, named John Deeling, at whose house the prosecutrix stopped when she first came to Moline, and for whom she acted as cook for a short time, swears that he knew her in Belgium, and that her general reputation there, in the neighborhood where she lived, for truth and veracity, and for virtue and chastity, was bad; that she was talked of in the saloons in Ghent as a bad woman, and as the keeper of a house of ill-fame; and that, since coming to this country, she had told him, that she ran a house of ill-fame in Ghent, and had kept a saloon in connection therewith, making her living thereby.  Two other witnesses swear, that the prosecutrix had stated to them that she had kept a house of ill-fame in Ghent, Belgium, before she came to this country. Two witnesses produced by the prosecution swore, that they had known her as a saloon-keeper in Belgium, and had been in her saloon there, and that she did not keep a house of ill-fame there, and that her reputation for chastity was good.  One witness for the prosecution, who had known her here for something more than a year, but had no other acquaintance with her than to pass the

salutations of the day, swears that her general reputation for truth and veracity was good.

The proof shows, that the prosecutrix and plaintiff in error had met only three or four times before the alleged assault was committed. As to the first time she saw him, she says that she was at the house of a neighbor named Braum, sitting on the porch, peeling apples; that Stevens was "alongside of her" on his knees; that he took hold of her breasts, and sat down, and put his hand under her clothes upon her leg, and she gave him a slap, and he "got up" and went away, and made a motion to her with his hands, indicating that he would pay her money; but that she continued to sit there, and said nothing to her husband about it, because she was afraid; and that all this occurred about five minutes after she saw him for the first time. The date of this first meeting was Thursday, August 17, 1893. As to what then occurred plaintiff in error says, that he came into Braum's yard, and saw her sitting on the step; that she addressed him by name, and appeared to know him, and spoke to him as if she was intimately acquainted with him; that her appearance indicated that she was not a pure woman; that he sat down on the porch, because there was no other place to sit, and was close enough to push her without getting up; that he only remained there a minute or two; that Mrs. Braum's little girl was sitting on the porch and Mrs. Braum was passing to and fro; that he merely brushed her on the thigh with his hand outside her clothes; and the only thing she did was to shake her head, having a knife in one hand and the apple-dish in her lap.

Plaintiff in error was again at the house of Braum, who had been doing some work for him, on Sunday, August 20. Prosecutrix and her husband were there at that time drinking coffee. He remained but a few moments, and nothing passed between them.

She says that, on the next day Monday, August 21, about half-past twelve o'clock Stevens came to her house

to get her husband to do some work upon a well near Braum's house; that her husband was eating his dinner; that Stevens made lewd motions to her behind her husband's back and showed her money; that she was busy undressing herself, and Stevens went after her in another room, and asked her if she wanted money; that he then went away and her husband went to work; that about two o'clock in the afternoon Stevens came back to the back door; that she was in the kitchen and saw him coming, and thought she heard him knock, and jumped through the window and ran to one of the neighbors, and saw him no more that day. Two witnesses swear, that, in giving an account of this day's transactions, the prosecuting witness spoke of having gone into a room and got a revolver, but she says that she said nothing about a revolver. The plaintiff in error says, that he has no recollection of being at the house of the prosecuting witness but once on Monday; that he went there to get Berkins to help a man who was digging a well, as Berkins had told him the day before at Braum's house that he wanted work; that he knocked, and was invited in, and found Berkins and his wife in the kitchen; that she motioned to her husband to go into the sitting room, which he did; that he sat down at the table to eat his dinner, saying that he would go to the well as soon as he finished his meal; that, when he finished, he went into another room and closed the door after him; that the prosecutrix motioned with her hand to the door of the room where her husband had gone, and said to plaintiff in error in broken English: "You come to-morrow."

The next meeting took place on Tuesday morning, August 22, at her house, at which time the assault is alleged to have been made. She swears that, on that day, Stevens came to her house about eight o'clock in the morning while her husband was working for him near Braum's; that he did not knock; that there was a mosquito door in front which was open; that the bed-room

window was open; (there was a dwelling on one side of the house 52 feet distant, and another on the other side 90 feet distant); that Stevens asked if her husband was at work and she said, yes; that he then came in and closed the door; that she was sitting in a rocking chair knitting stockings, and there was a low kitchen chair in front of her on which her foot rested; that he began to talk to her and sat down upon the chair in front of her; that she said nothing, but was busy fixing her stockings; that he put his hand under her clothes, and she slapped him on the fingers; that he then began taking liberties with her again; that she said it was warm and rose up to open the door; that he then put one hand under her chin and one under her clothes, and held her; that the rocking chair tipped over and broke the hinge on the buttery door; that he threw her over the chair; that she scratched him, and as soon as she scratched him, he let her loose; that, after she was loose, she took the poker, and struck him, and he commenced to cry, and said "forgive me;" that his hat fell in the water and he took it and ran away; that she ran over to one of the neighbors and showed her with a stick how she had struck him; that she went to her husband and told him what Stevens had done.  Upon her original account of the transaction she made no statement that the plaintiff in error exposed his person to her, but at a subsequent sitting she swore that such was the fact.  She made no outcry.

The plaintiff in error testifies, in regard to the occurrences of Tuesday, that he went to the house of the prosecutrix on that morning about nine o'clock and knocked; that she said to him "come in;" that she was mending stockings and motioned to him to take the chair in front of her, saying "take a chair;" that her chair was by the window, and the back of his was against the wall; that he did put his hand under her clothes upon her thigh; that she sat there, and he took his hand away, and sat

back in his chair; that she then raised both her hands and scratched and tore his face, and swore at him, and said she would make him pay, and motioned to him to leave; that he left as soon as he could; that she did not strike him with a poker or any other weapon; that he did not expose his person to her in any way, nor put his hand on her throat; that, when he went out of the house, she went out and picked up a piece of kindling wood, and made a motion as if to throw it at him ; that he got into his buggy, and went to the place where her husband was working; that, after a little while, she came there, and she and her husband went to Braum's house, where he followed them and left them.

That day the prosecutrix went before a justice and swore out a warrant for the arrest of plaintiff in error. It seems that, in the evening of that day, plaintiff in error and one Verdict, a Belgian, went to Berkins and his wife to see if the matter could be settled, neither party seeming to be aware that they were doing anything wrong by making a settlement. Berkins wanted $50.00, Mrs. Berkins said they would take $25.00. Finally Berkins agreed "to let it go for $20.00." Stevens then "put $20.00 on the trunk; Mrs. Berkins took the money."

The plaintiff in error assigns as errors, (1) that the evidence does not establish his guilt; (2) that the court permitted the prosecution to prove not only that the prosecutrix made complaint to others shortly after the alleged assault, but that she made complaint to others that she had been assaulted by plaintiff in error; (3) that the State's attorney, in his argument to the jury, made improper remarks; (4) that both the jury and the bailiff in charge of the jury were guilty of improper conduct; (5) that the court refused to give defendant's instruction No. 11; (6) that the court refused to permit the prosecutrix to be cross-examined as to certain convictions for crime, alleged to have been obtained against her, and certain punishments for crime, alleged to have been in-

flicted upon her, in Belgium before coming to this country; (7) that the court refused to permit the prosecutrix to answer a question put to her by the defense upon her cross-examination, as to whether she did not occupy the same bed with Berkins, her present husband, from April 27, 1893, when she arrived in this country, up to June 6, 1893, when she was married to him,—that is to say, as to her cohabitation with him before marriage.

JACKSON & HURST, GEORGE W. WOOD, and JAMES M. BEARDSLEY, for plaintiff in error.

M. T. MOLONEY, Attorney General, and T. J. SCOFIELD and M. L. NEWELL, of counsel, C. J. SEARLE, State's Attorney, and W. M. McENIRY, for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The offense charged in this case is assault with intent to commit rape. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Rev. Stat. Crim. Code, chap. 38, div. 1, sec. 20). There is no doubt, that the plaintiff in error here was guilty of taking improper liberties with the prosecutrix, but, upon the question whether he was guilty of an assault upon her with a felonious intent to have carnal knowledge of her by force and against her will, the case is an exceedingly close one. In *Barr* v. *People*, 113 Ill. 471, we said, in reference to the crime of assault with intent to commit a rape: "Before the accused could be rightfully convicted, it should appear, from the evidence, he made an unlawful assault upon the prosecuting witness with intent, feloniously and forcibly, to ravish and carnally know her against her will." To establish the crime, it must appear from the evidence, not merely that there was an assault, not merely that the prisoner was trying to persuade the prosecutrix to yield to his embraces, but that his intention was, if it

became necessary, to force a compliance with his desire at all events, and regardless of any resistance made by his victim. (*Commonwealth* v. *Merrill,* 14 Gray, 415; *State* v. *Priestley,* 74 Mo. 24; *Reynolds* v. *People,* 41 How. Pr. 179; *White* v. *State,* 36 N. E. Rep. 274; *Irving* v. *State,* 9 Tex. App. 66). Although the aggressor may have been guilty of indecent or even violent familiarity with the person of a female, he has not been guilty of assault with intent to commit rape upon her, if the proof shows that it was not his object or intent to accomplish his purpose by force against her will and without her consent. (*Outlaw* v. *State,* 35 Tex. 481; *Irving* v. *State, supra;* 19 Am. & Eng. Ency. of Law, p. 969). It must appear, that he intended to use whatever amount of force was necessary to overcome her resistance, and compel her to submit to his passion. (*State* v. *Hagerman,* 47 Iowa, 151; *State* v. *Kendall,* 73 id. 255).

As a general rule, consent on the part of an adult woman deprives the act of the character of an assault, unless her consent has been procured by fraud. (Roscoe's Crim. Ev.—8th ed.—marg. page 306; 1 Bishop on Crim. Law—7th ed.—sec. 261; 2 id. secs. 35, 36; 1 Am. & Eng. Ency. of Law, p. 784).

Ordinarily, the accused and the prosecutrix are the only parties who have any actual knowledge of the facts, where the crime charged is rape, or an attempt to commit rape. The conviction, in most cases, is brought about by the testimony of the woman alone. Long ago it was said by Lord Hale in regard to the charge of such a crime, "that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." (1 Hale, 635). Accordingly, the testimony of the prosecuting witness must be scrutinized with caution, and, where the defendant denies the crime, her evidence should be corroborated. Her general reputation for chastity may be shown as bearing upon the question of consent. If she made outcry at the

time of the occurrence, or made complaint immediately thereafter, such facts may be shown as corroborating circumstances. (1 Russell's Law of Crimes, marg. pages 688, 689; *State* v. *Hagerman, supra;* 19 Am. & Eng. Ency. of Law, pages 958-963, and cases in notes).

Examined in the light of these principles, the evidence in this record cannot be said to so clearly preponderate in favor of the prosecution as to lead us to the conclusion, that no harm was done by the erroneous admission of the evidence hereinafter referred to. Where the evidence upon the question of guilt is not such, that all honest minds of ordinary intelligence must necessarily come to the same conclusion after giving it proper consideration, the defendant is entitled to have it passed upon by a jury instructed with substantial accuracy as to the law applicable to it. (*Hoge* v. *People*, 117 Ill. 35). So, where the evidence is conflicting and the case is close upon its facts, no incompetent testimony should be permitted to reach the jury, which might improperly influence their verdict. (*Gifford* v. *People*, 148 Ill. 173).

The only assignment of error, which we deem it necessary to notice, is the second. The testimony, therein alleged to have been improperly admitted, is that of Martin Berkins, the husband of the prosecutrix, and that of Winnie Dunlevy, both witnesses for the State, as to the complaint made to them by the prosecuting witness after the alleged assault was committed. The testimony of Martin Berkins, which is objected to, is as follows: "On the road from your work up to Braum's you may state if your wife made complaint to you that she had been assaulted. Answer yes or no. (Objection by defendant; overruled; exception). A. Yes, sir. Q. Did she tell who assaulted her? Answer yes or no. (Objection by defendant; overruled; exception). A. Yes, sir. Q. Who was he? (By the court: Simply tell his name). (Objection by defendant; objection overruled; exception).

A. Stevens, she says.    Q. Was it Stevens, the defendant?
(Objection; overruled; exception).    A. Yes, sir."

The testimony of Winnie Dunlevy upon this point,
which was objected to, is as follows:  "Q. You may state
whether or not she made complaint to you that she had
been assaulted.    Answer that, yes or no.    A. Yes, sir.
Q. In that complaint did she state who had assaulted her?
(Objection; overruled; exception).    A. Mr. Stevens."

The objection to this testimony is, that these witnesses
for the State were allowed to say, that Mrs. Berkins told
them that Stevens had assaulted her.    The statements
were made in the absence of Stevens, and, of course,
under the ordinary rules of evidence, were mere hearsay.
In case of a prosecution for rape, or for an assault with
intent to commit rape, it may be proven by the testimony
of third persons that the prosecutrix made complaint to
them, provided such complaint was made as soon as was
practicable, or without any inconsistent delay. (3 Green-
leaf on Ev. sec. 212).  This is an exception to the general
rule, that hearsay evidence is inadmissible.    The law
allows the exception upon the generous supposition, that
a woman thus wronged will be prompted to express her
indignation at the injury inflicted upon her.    The fact,
that the prosecutrix made a complaint immediately after
the occurrence, is allowed to be proven, because it tends
to corroborate her testimony as given on the trial.    It is
not admitted for the purpose of proving the commission
of the offense, and cannot be introduced at all if the
prosecutrix is not a witness.    Accordingly, a witness to
the fact of the complaint may state when, where and to
whom it was made, but he cannot state the name of the
person charged with the offense, nor any of the details
of the transaction as communicated by the prosecutrix.
On the direct examination the practice has been merely
to ask whether she made complaint that such an outrage
had been perpetrated upon her, and to receive in answer
only a simple yes or no.    If the defendant desires to in-

quire into the particulars of her narration, he can do so upon cross-examination; or such particulars may be proven by way of confirming her testimony after it has been impeached. (3 Greenleaf on Ev. sec. 213; 1 Russell's Law of Crimes, marg. page 689; 19 Am. & Eng. Ency. of Law, page 959, and cases in notes; *State* v. *Jones*, 61 Mo. 232; *Scott* v. *State*, 48 Ala. 420; *Baccio* v. *People*, 41 N. Y. 265).

"In *Regina* v. *Osborne*, 1 C. & M. 622, (41 E. C. L. 338), after the witness had testified that the prosecutrix made complaint, and charged a particular person with the commission of the rape, it was proposed to ask her whose name was mentioned by the prosecutrix, and the court held that it was not permissible." (*State* v. *Niles*, 47 Vt. 82.)

In *Thompson* v. *State*, 38 Ind. 39, it was held, that the prosecutor may show that the prosecuting witness made complaint of the outrage recently after its commission, and when and where and to whom it was made, but "that he cannot be allowed to prove the name of the person charged with the crime, or the particulars as narrated by her."

While it may be true, as is claimed by counsel for defendant in error, that there are cases which hold to the contrary of the rule above stated, yet, in this State, we have already recognized the doctrine announced by the foregoing authorities as the correct one. In *Bean* v. *People*, 124 Ill. 576, where the indictment was for rape, this court said: "The complaint made by the witness was proper evidence only of the fact of making complaint, and not of who the person was that committed the offense."

·Here, Martin Berkins and Winnie Dunlevy were allowed to testify on behalf of the State, not merely that Mrs. Berkins made complaint to them, but that she told them, in the absence of plaintiff in error, that plaintiff in error had assaulted her. Clearly this was hearsay evidence and inadmissible under the rule announced. We are unable to say, that the jury did not accept this hear-

say testimony, and act upon it, as original and substantive evidence to prove the truth of the statements of the prosecuting witness, and to establish the charge against the accused.  If it had that effect, it operated seriously to his prejudice and injury.

For the error thus indicated, the judgment of the circuit court is reversed and the cause is remanded to that court.

*Reversed and remanded.*