(No. 14125.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN A. BURNS, Plaintiff in Error.

*Opinion filed December 22, 1921.*

I. CRIMINAL LAW—*when new trial should be granted to include testimony of another witness.*  In a murder trial, where the only witnesses to the fight which resulted in the homicide give unsatisfactory evidence on which to sustain the conviction, a new trial should be allowed to obtain the testimony of a newly discovered witness who asserts that he saw the fight but did not suppose that either party was hurt, and did not know that the defendant was indicted until after he heard of his conviction for manslaughter.

2. SAME—*repetition of instructions should be avoided.*  Counsel in a criminal case should not burden the court with a large number of instructions but should request only enough instructions to cover the law in the case, as the repetition of the same propositions of law in different language in numerous instructions merely tends to confuse the jury and should be avoided.

3. SAME—*instruction as to presumption of malice from deliberate act should not ignore defense of self-defense.*  Where self-defense is set up in a murder trial, an instruction as to presumption of malice or intent arising from a deliberate assault likely to be attended with dangerous consequences should not ignore such defense, as self-defense is usually a deliberate act and is quite often attended with dangerous consequences, yet the law does not presume from these circumstances the malice or intent necessary to make out a case of murder.

4. SAME—*what instruction as to self-defense tends to confuse the jury.*  Where self-defense is set up in a murder trial, an instruction given for the People stating "that the law affords ample protection to every citizen, and under no circumstances can he take the law into his own hands except in necessary self-defense," etc., tends to confuse the jury, as the expression "take the law into his own hands" is commonly regarded by laymen as meaning an unlawful act, whereas a person who properly acts in self-defense is not taking the law in his own hands but is exercising a natural right which the law recognizes and protects.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding.

ALLEGRETTI, SHEA & GANNON, (FRANCIS B. ALLE-
GRETTI, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E.
CROWE, State's Attorney, and GEORGE C. DIXON, (CLYDE
C. FISHER, EDWARD E. WILSON, and HENRY T. CHACE,
JR., of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Plaintiff in error was convicted in the criminal court of
Cook county of the crime of manslaughter under an indict-
ment charging murder. This writ of error is prosecuted
to reverse that judgment for errors in the instructions, for
failure to prove the defendant's guilt beyond a reasonable
doubt, and for other reasons.

The killing grew out of a wild night in Chicago's drink-
ing places. Dorothy Scofield, wife of the deceased, in-
vited Betty Arthur to go with her to fill an appointment
which she had with one Rosenberg. They met him at the
corner of Sangamon and Madison streets and Mrs. Sco-
field introduced Miss Arthur to him as her sister. Rosen-
berg took the women across the street where he introduced
them to John Burns, plaintiff in error, as Miss Betty Arthur
and her sister, Miss Dorothy. They walked a few blocks
from the place and entered a wine room, where they had
three or four rounds of drinks. Mrs. Scofield drank whisky
each time and the others drank whisky part of the time and
beer part of the time. From there they went to the Belvi-
dere, where they drank more whisky. About one o'clock
they went to the Arsonia, remaining there about an hour
and having a few more drinks. From there they went to
Mary Ann's place, where they had some more whisky.
About three o'clock in the morning they started home in a
taxicab. Mrs. Scofield lived with her husband at 3232 War-

ren avenue and Miss Arthur lived in another apartment in the same building. Plaintiff in error and the two women left the cab at the corner, about a half block from the Scofield home. Rosenberg remained in the cab, which immediately drove away. Mrs. Scofield was intoxicated, and it was necessary for plaintiff in error and Miss Arthur to assist her to her home. As they approached the house Mrs. Scofield saw her husband and crouched down near the stone wall surrounding the house. Scofield came rushing up to them and began cursing, beating and kicking his wife. The plaintiff in error protested, and Scofield cursed and attacked him. After a brief scuffle Scofield ran into the house and then rushed out again, renewing his attack on plaintiff in error. Plaintiff in error kept backing away and Scofield kept striking him. Plaintiff in error is five feet three inches tall and weighed about 135 pounds, while Scofield was five and a half feet tall and weighed about 150 pounds. As plaintiff in error retreated into the street he drew his knife and in the fight which ensued Scofield was stabbed in the side of the abdomen. Plaintiff in error escaped and left the scene. When he boarded the street car at the corner he had a gash along the side of his neck and was bleeding profusely. His collar and overcoat were saturated with blood. He did not know until the fight was over that Mrs. Scofield was married or that his assailant was her husband. After Scofield and his wife had gone into the house Scofield discovered that he had been stabbed. A physician was called and he found a slight stab-wound in the side of the abdomen but did not consider it serious. He prescribed some simple remedies and left. The following morning Scofield began to suffer and another physician was called. Scofield was taken to the hospital, and it was there discovered that the large intestine had been punctured and that the patient was suffering from peritonitis. He died shortly after being placed on the operating table. Plaintiff in error went directly home after the difficulty and did not know

that Scofield was injured until he was arrested some days later. Plaintiff in error was employed as a cutter for a tailoring establishment in Chicago, and the knife he used was an ordinary pocket knife which he carried. We have not attempted to set out in detail all that occurred before and during this fight, but we think we have stated all that is necessary for the purposes of this opinion.

The only proof in the record that a weapon was used during the fight is the testimony of plaintiff in error. He testified that after Scofield came out of the house the second time he struck plaintiff in error in the back and in the neck, and that witness did not draw his knife until he felt the pain from these wounds and saw the blood running down over his coat. He could not see what Scofield had in his hand. The women testified that they did not see anything in the hands of either of the men.

In connection with the motion for a new trial plaintiff in error filed the affidavit of James Blue, who swore that he was engaged as a taxicab driver and that he overheard some people discussing the conviction of plaintiff in error for manslaughter on account of a fight which occurred some time in March, 1920, in the 3200 block on Warren avenue; that it immediately occurred to him that he had seen the trouble, and that he told the people who were discussing the matter what he had seen; that plaintiff in error came to see him and that he told him what he had seen; that some time during the last part of March, 1920, he delivered some passengers to an address on the south side of Warren avenue about a half block east of Homan avenue at about half-past three in the morning; that they left the cab and just as he was about to start his car he heard loud talking and swearing, and that he looked across the street and saw two women and two men and that the men were holding onto one another; that one man got loose and ran into a building and then ran out again immediately and chased the other man, who started to run into the roadway;

that the man who ran from the house had his hand raised as he chased the other man and that he saw something bright in his hand, which he believed to be a knife; that when the man, whom he now believes to be Burns, reached the middle of the roadway he saw Burns turn and grab his assailant, and that then one of the women came up and took the assailant by the arm and pulled him away and that they went into the house; that he did not investigate further because he did not think anyone was hurt much, because he saw the man whom he believes to be Burns walk up the street holding his handkerchief to his face, and that he drove away and thought no more about the matter until he heard the discussion of the conviction. In view of the unsatisfactory character of the testimony on which this conviction must rest, a new trial should have been granted and the jury given the opportunity to consider the testimony of this witness.

There are several inaccurate statements appearing in the instructions, but the most serious objection to the instructions is that at least twice as many were given as were necessary to give the jury a full understanding of the law of this case. This situation grows out of the effort of counsel for both parties to have the court make a closing argument to the jury through the instructions. The State offered forty instructions, twenty-two of which were given, and plaintiff in error offered twenty-nine, nineteen of which were given. Counsel have little room to complain of error in instructions where they burden the trial court with the labor of weeding out a lot of miscellaneous stock instructions in the short time available for this task of the court. Repetition should be carefully avoided in instructions in a criminal case. Enough instructions should be given to cover the law of the case and no more. When propositions of law are repeated in different language in a number of instructions there is great danger of error, and the repetition only tends to confuse the jury.

We do not consider it necessary to discuss more than two of the instructions which ought not to have been given. People's instruction No. 14 is a stock instruction, which attempts to tell the jury how intent may be proven. It concludes with this phrase: "And if you further find from the evidence in this case beyond a reasonable doubt, that such assault was committed deliberately, and was likely to be attended with dangerous consequences, the malice or intent requisite to make out the case as charged will be presumed." This instruction wholly omits the defense of self-defense. One assailed may, in defending himself, deliberately assault another in a manner that is likely to be attended with dangerous consequences. Self-defense is usually a deliberate act, and it is quite often attended with dangerous consequences, and yet the law does not presume from these circumstances the malice or intent necessary to make out a case of murder. The giving of this instruction was clearly error.

People's instruction No. 34 tells the jury "that the law affords ample protection to every citizen, and under no circumstances can he take the law into his own hands except in the necessary self-defense of his property or person," *et cetera.* While the quoted part of this instruction would not, of itself, justify a reversal, such expressions in instructions should be avoided. When a citizen exercises the right of self-defense he is not taking the law into his own hands. He is simply exercising a natural right which the law recognizes and protects. We think it is commonly understood among laymen that when a man is said to "take the law into his own hands" he is committing an unlawful act. An instruction of this character can give no light to the jury and tends to confuse them, and therefore it ought not to be given.

The judgment is reversed and the cause is remanded to the criminal court of Cook county for a new trial.

*Reversed and remanded.*