(No. 34058.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES DAVIS, Plaintiff in Error.

*Opinion filed January 24, 1957—Rehearing denied March 19, 1957.*

John R. Snively, of Rockford, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and Robert R. Canfield, State's Attorney, of Rockford, (Fred G. Leach, and Rosario A. Gaziano, of counsel,) for the People.

Mr. Justice Davis delivered the opinion of the court:

James Davis, defendant, was indicted in the circuit court of Winnebago County for the crimes of forcible rape, statutory rape, and assault with intent to commit rape, alleged to have been committed on September 18, 1955, upon a 14-year-old girl. He entered a plea of not guilty; the case was tried before a jury which found him guilty of forcible rape, in the manner and form as charged in count I, and guilty of statutory rape, as charged in count II of the indictment, and fixed his punishment at imprisonment in the penitentiary for 15 years. No verdict was returned as to the third count of the indictment which charged assault with intent to commit rape. Post-trial motions were overruled, and the defendant was sentenced on the jury's verdict. He now brings this writ of error to review the judgment of conviction and sentence.

The defendant assigned the following errors for reversal of the judgment: (1) denial of application for change of venue; (2) the admission of evidence; (3) the evidence failed to prove the guilt of defendant beyond a reasonable doubt; (4) improper argument by State's Attorney; (5) the giving and refusing of certain instructions; and (6) error in entering judgment of conviction on the verdict of the jury and in imposing sentence.

Defendant first contends that the court erred in denying his application for change of venue. He was indicted by the grand jury and *capias* issued for his arrest on Janu-

ary 9, 1956. On January 11, 1956, the defendant appeared in court with his attorney, and after being arraigned, made a motion to quash the indictment which motion was heard and denied. Defendant then entered a plea of not guilty to the indictment and the court set the case for trial on February 13, 1956, but it was not reached. On the following day, the defendant filed a petition for change of venue from Judges O'Sullivan and Dusher, on the ground of prejudice. The verified petition, not accompanied by supporting affidavit, averred that "such cause for a change of venue arose and came to his knowledge heretofore and again on February 13, 1956."

The Venue Act, (Ill. Rev. Stat. 1955, chap. 146,) contains the requirements and provides the procedure to be followed in connection with a change of venue. The specific provisions of certain sections of this act are subsequently outlined. Section 18 provides that when any defendant in an indictment or information fears that he will not receive a fair and impartial trial in the court in which the case is pending because the judge is, or the inhabitants of the county are, prejudiced against him, the court shall award a change of venue upon the application of the defendant, provided the application is in conformity with subsequent sections of the act. Section 20 provides that every such application shall be by petition setting forth the cause of the application and praying a change of venue, and that the petition shall be verified by the affidavit of the defendant. Section 21 provides that when the cause for change of venue is the prejudice of the judge against the defendant or his attorney, the petition shall be accompanied by the affidavit of the defendant or his attorney, stating that he believes the judge is so prejudiced against the applicant or his attorney that either cannot have a fair and impartial trial. Section 24 provides that no application for change of venue made more than 30 days after the earliest day at which the applicant might have been heard

shall be allowed unless the applicant shall have given to the State's Attorney at least 10 days' previous notice of his intention to make such application, except where the causes have arisen or come to the knowledge of the applicant within less than 10 days before making the application. Section 25 provides that no change of venue shall be granted more than 30 days after the earliest day at which the applicant might have been heard unless he shall show that the causes for which a change is asked have arisen or come to his knowledge since the expiration of such 30 days.

In a criminal case, if the petition for change of venue on account of the prejudice of the judge, and the accompanying affidavit, are in compliance with the act, the right of the defendant to a change of venue is absolute. Under such circumstances the trial judge loses all power and authority over the case except to make the necessary orders to effectuate the change; and the denial of the petition constitutes reversible error. *People* v. *Rosenbaum,* 299 Ill. 93; *People* v. *Cohen,* 268 Ill. 416; *Cantwell* v. *People,* 138 Ill. 602.

The petition was not accompanied by an affidavit of defendant or his attorney, and we question whether it was filed in apt time. However, we need not determine whether it met with the technical requirements of the statute. In colloquy relative to change of venue, between the trial court, the attorney for defendant, and the State's Attorney, and in the presence of the defendant, the attorney for the defendant stated: "I understand your Honor is going to be here next month; Judge Dusher is not going to be here. I would say this, if the Court would remove this case from the trial list at the present time and not pass on the petition, it could be set for trial before you next month. I understand there is to be a jury." In view of this statement we conclude that the allegation of prejudice was without foundation; that the petition was filed for the purpose of delay; that the alleged prejudice of the trial judge was

waived; and that the trial court properly denied the petition for change of venue.

Defendant next contends that the trial court erred in the admission of evidence. He first urges that the comments of the complaining witness made immediately after the alleged offense were not admissible. The mother of the complaining witness testified on direct examination that she was awakened by her 9-year-old daughter about 2:30 or 3:00 o'clock on the morning of September 18, 1955; that she went into the kitchen, turned on the light, and saw a man standing beside complaining witness's bed in the adjoining bedroom; that she could see his height but not his face because there was no light in the bedroom and she wasn't close enough to him; that he was in the neighborhood of six feet tall; that he told her to get back in her room if she knew what was good for her; that she went back to her bedroom to awaken her husband and then heard the person leave the house by the kitchen door. She further testified that, after telephoning for the sheriff, she talked to her 14-year-old daughter, the complaining witness; that said daughter was hysterical and there wasn't much she could get out of her; and that the complaining witness said, "Mother, he threatened to kill me." The mother also testified that the complaining witness told her that defendant also threatened to kill Billy; that he said he would cut her guts out if she didn't lay down and shut up; that he said if she didn't do what he wanted to do he would kill her; and that complaining witness said, "Mother, he did it to me."

In rape cases, where the injured female is a witness, it is proper for her to testify that she made prompt complaint concerning the outrage which had been perpetrated upon her, and it is proper to permit the person to whom she complained to give testimony that the complaint was made, but it is not proper for such person to give the name of the accused or the details of the offense. We

believe that the testimony of the mother was within the limitations prescribed by law. The details of the offense were not related by her. The declarations preceding the words, "Mother, he did it to me" were merely introductory. Evidence of such complaint is admitted on the theory that the natural instinct of a female thus outraged prompts her to express her indignation at the injury inflicted upon her, and it is deemed relevant on the ground that it corroborates her statement that she was assaulted. (*People* v. *Romano*, 306 Ill. 502; *Stevens* v. *People*, 158 Ill. 111.) To be admissible the complaint of the offense must be made, as it was in this case, without inconsistent or unexplained delay and must be a spontaneous declaration of injury, and not the mere recital of past events made in answer to questions. (*Cunningham* v. *People*, 210 Ill. 410.) The admission of such complaint is an exception to the general rule that hearsay evidence is not admissble and does not extend to crimes other than rape. *People* v. *Romano*, 306 Ill. 502; *Stevens* v. *People*, 158 Ill. 111.

Defendant also urges that the sister of the complaining witness, an eyewitness to the event, should not have been permitted to testify in that preliminary inquiry was not sufficient to establish her competency. At the time of the offense, the sister was 9 years old; at the time of trial she was 10 years old and in the fourth grade. We are unable to agree that it was error to permit her to testify. She was subjected to an examination by the court to determine her competency; the court found that the child had sufficient mental perception and moral understanding to qualify her to speak as a witness. If the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, she was competent. Not age, but the degree of intelligence of a child, determines the question of the child's competency. (*Shannon* v. *Swanson*, 208 Ill. 52; *State* v. *Segerberg*, 131 Conn. 546, 41 A.2d

101.) In the case at bar the intelligence of the witness was ascertained, to some extent, by her appearance and conduct in the presence of the court, and it is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that a decision to admit such testimony will be reviewed. (*People* v. *Karpovich*, 288 Ill. 268.) We find no reason to disturb the court's determination that the witness was competent.

At the trial a statement in writing in narrative form, signed by the defendant, was offered in evidence as People's exhibit No. 1. The defendant objected to its introduction on the ground that the statement was not voluntary. A preliminary hearing on this issue was had before the court out of the presence of the jury. Joe Ferona, a witness for the People, testified that on October 14, 1955, approximately an hour-and-a-half after being taken into custody, the defendant was questioned by the witness and another deputy sheriff at the sheriff's office; that approximately one-half hour thereafter the witness typed People's exhibit No. 1 from statements made to him by defendant; and that the defendant immediately read and signed it. In substance, the statement sets forth that the defendant was 28 years of age; that on the morning of September 18 he entered the complaining witness's home in Rockford at about 4:00 A.M.; that a young girl let him in; that he told her to go to bed; that he got on top of her but had nothing to do with her sexually; that he left by the rear door of the house; and that no threats or promises were made to defendant and no acts of violence done him in connection with the giving of the statement.

On cross-examination Ferona testified that he and deputy sheriff Mike Iasparro, picked up defendant at about 6:45 P.M. at the house of defendant's sister; that they drove him first to the complaining witness's home, then to the Atwood factory to be viewed by a prospective witness, and then to the sheriff's office; that about 8:15 P.M. or

twenty minutes after the three arrived at the sheriff's office, the defendant made the statement, and that the defendant, deputy sheriff Mike Iasparro, and Robert L. McDonald, an assistant State's Attorney, were present.

Mike Iasparro was called as a witness on behalf of the People. His testimony on direct examination corroborated that of witness Ferona. On cross-examination he testified that defendant was told he could have a lawyer, and that defendant didn't appear to be too nervous.

Defendant, on direct examination, testified that he was at his sister's home eating supper when the officers arrived on October 14; that he was taken by the deputies to the complaining witness's home and the Atwood factory, and was questioned by the officers during this time; that after they reached the court house the two officers questioned him for at least half an hour; that he was nervous and scared; that the officers promised that if he would sign a statement, he could go home to his wife and eat supper; and that he had eighth grade education and was unable to read or write. While a witness he was presented with the statement in question and asked to read it, and the record indicates that he read the introductory portion of the statement well. It also appears that after reading approximately one third of the body of the statement he apparently remembered that he had testified that he was unable to read. Thereafter, he read in a halting, stumbling and confused manner. It is our conclusion that the defendant could read the statement. In response to a question regarding a request for a lawyer he said he did ask for one but that the two deputy sheriffs told him the lawyers were "all out of town."

Confessions are competent evidence only when they are voluntarily made. (*People* v. *Wagoner*, 8 Ill.2d 188; *People* v. *Sweeney*, 304 Ill. 502.) A confession need not be spontaneous, nor is it necessary that it proceed wholly at the suggestion of the accused. It may be set in motion by

external causes so long as such influences are not what the law deems improper. A confession is not rendered inadmissible by the mere fact that it was elicited by questions put by police officers or others, or by the fact that an exhortation to tell the truth produced it, (*People* v. *Vinci,* 295 Ill. 419,) nor does the fact that the prisoner was not warned that the confession might be used against him render it incompetent. *People* v. *Fox,* 319 Ill. 606; *Wilson* v. *United States,* 162 U.S. 613.

Defendant contends that the statement in question should have been supported by the testimony of all persons present who heard or participated in the questioning. Where there is evidence of improper conduct in obtaining an alleged confession, the People are required, if feasible, to produce all persons having any authority or control over the defendant, and to show all circumstances surrounding the taking of the confession; and the court may exclude such confession unless all parties present in connection with its taking are called as witnesses. (*People* v. *Wagoner,* 8 Ill.2d 188; *People* v. *Ickes,* 370 Ill. 486.) However, in the case at bar, we find no evidence of improper conduct in obtaining the alleged confession. It was signed within two hours after the defendant was taken into custody. There was no long or unreasonable interrogation. There is no claim of violence, threats of harm, duress, coercion, or abuse, or that there was an offer or promise of leniency. We cannot regard the promise, that defendant might go home to his wife and eat supper if he signed the confession, to be such as would exercise influence over his mind and induce him to confess to a criminal offense which he did not commit. We find no evidence of improper conduct in obtaining the confession and believe that the People established this by the testimony of the deputy sheriffs. However, as stated in *People* v. *Fox,* 319 Ill. 606, 617, "The order of proof is largely within the discretion of the trial judge. While the burden of showing that no

improper inducement existed when the confession was made is upon the prosecution, it is not necessary for the prosecution to produce all its evidence before any evidence is produced on behalf of the accused. After the State has made a *prima facie* case, then the burden of going forward with the proof properly shifts to the accused. [Citation.] After the accused has made his case, the prosecution may produce evidence in rebuttal to meet that offered against the competency of the confession. In order to meet its burden of showing the confession to be voluntary, the prosecution must show by its witnesses the circumstances under which the confession was made, with sufficient detail to enable the court to determine the question." Since the defendant offered no evidence of improper conduct in obtaining the alleged confession, the trial court did not err in admitting it in evidence without the testimony of the assistant State's Attorney, who was likewise present when it was taken.

The defendant contends that the testimony of Erwin Le Roy Pollett, introduced in rebuttal, was too remote and therefore not admissible. Defendant took the stand in his own defense and testified, in support of his alibi, that prior to October 14, 1955, he had never, at any time, gone to the home of the complaining witness, nor been on the street where she lived. The testimony of Pollett was introduced to establish that he had seen the defendant peering into the window of complaining witness's home one week after the crime was committed. It was given to rebut the direct evidence given by the defendant, and was clearly admissible for that purpose.

The defendant further contends the evidence failed to prove his guilt beyond a reasonable doubt, and that there was no evidence to show force or resistance. This contention cannot stand in the light of the facts in this case. The complaining witness was a 14-year-old girl peacefully sleeping in her home with her brothers and sisters. The

defendant entered her home in the night time. He had no acquaintanceship with this family, and could have had no lawful purpose in entering the home. The record shows that he went into the bedroom and forcibly had sexual intercourse with the girl against her will; that he threatened he would cut her guts out if she didn't lay down and shut up, and said that if she didn't do what he wanted to he would kill her; and that he forcibly pulled off her pajama bottoms. The complaining witness testified that she tried to fight, but he threatened her with some object in his hand and threatened to kill both her and her brother, and that she was scared. After considering all the facts and circumstances in evidence, the jury determined, and we believe properly, that the acts were against her will, (*People* v. *Eccarius,* 305 Ill. 62; *Austine* v. *People,* 110 Ill. 248,) and that the defendant was guilty beyond a reasonable doubt of forcible and statutory rape.

The defendant urges that his age was not proved. To establish the *corpus delicti* in statutory rape, it is necessary that the proof should show that the female was under the age of 16; that the male was over the age of 17; and that sexual intercourse occurred between them. To establish the *corpus delicti* in forcible rape, it is necessary that the proof show that a male person of the age of 14 years and upwards had carnal knowledge of a female forcibly and against her will. The defendant, in his signed statement admitted into evidence as People's exhibit No. 1, stated that he was 28 years of age, married, and that he was living with his wife. Later he testified that he was 28 years of age and had been employed in a local factory for eight years. Without objection on the part of the defendant, the deputy sheriff, Mike Iasparro, testified that the defendant had said he was 28 years old; and that he appeared to be that age. In the absence of specific objection, it was proper to permit this witness to give his opinion as to defendant's age. (*People* v. *Claussen,* 367 Ill. 430.)

Anna Catherine Davis, mother of defendant, was called as a witness in his behalf, and she testified on direct examination that he was 28 years of age. The record clearly shows that the defendant was over the required age.

The defendant also contends that there was no evidence which identified him as the person who committed the crimes charged in the indictment. The testimony of one credible witness, if positive, is sufficient to convict even though contradicted by the accused. Where it is corroborated by other evidence, it is clearly adequate to justify a conviction. (*People* v. *Sproch,* 409 Ill. 55; *People* v. *Thompson,* 406 Ill. 555.) In the present case, the defendant in his statement admitted being in the complaining witness's home at the time of the assault. He was positively identified by one witness who saw the offense committed. Two other witnesses identified the defendant by height, profile and voice. We find no merit in this contention.

The defendant also argues that the testimony of the prosecuting witness was not clear and convincing, and that unless such testimony is clear and convincing, it must be corroborated by other facts and circumstances in order to sustain a conviction. (*People* v. *Silva,* 405 Ill. 158; *People* v. *Williams,* 414 Ill. 414.) However, in the instant case the testimony of the prosecuting witness was clear and convincing, and, in addition, she was corroborated by the testimony of her sister as to the events leading up to and at the time of the offense. The testimony of her mother, and the admissions contained in the statement of defendant were likewise corroborative of her testimony. Dr. Roberts, the examining physician, testified that he found her hymen torn in two places and bleeding; that he found sperm cells from the testes of a male within her vagina; that no old or other tears were found in the hymen; and that it was his belief that this was the first time her vagina had been entered. These circumstances are mute, corroborative evidence to support her testimony.

Standing against this positive evidence is the defense of an alibi. On such a record we will not substitute our judgment for that of the jury that heard and saw the witnesses, unless it can be said that it is palpably contrary to the weight of the evidence, or is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People* v. *Ortega*, 5 Ill.2d 79; *People* v. *Harris*, 391 Ill. 358; *People* v. *Canonica*, 370 Ill. 441.) The mere fact that the evidence is conflicting will not justify reversal. *People* v. *Meyers*, 412 Ill. 136; *People* v. *Hinderhan*, 405 Ill. 435.

As a further ground for reversal, the defendant contends that the trial court committed error in giving and refusing to give certain instructions. The People tendered 34 instructions of which 32 were given, while defendant tendered 27, of which 22 were given. We have considered them, but find no prejudicial error. However, error in the giving or refusing of instructions will not, alone, justify a reversal when the evidence of the defendant's guilt is so clear and convincing, as it was in the case at bar, that a jury could not reasonably have found the defendant not guilty. (*People* v. *McCurrie*, 337 Ill. 290.) After considering the 61 instructions tendered in this case, we cannot but quote the pertinent observations which we made in *People* v. *Burns*, 300 Ill. 361, at page 365: "Counsel have little room to complain of error in instructions where they burden the trial court with the labor of weeding out a lot of miscellaneous stock instructions in the short time available for this task of the court."

The defendant has also charged that the court erred in permitting improper argument by the State's Attorney. No specific objection, however, is assigned. We have considered the general propositions cited by the defendant and have read the argument as presented in the record, but we find no reversible error in this respect.

The defendant has also argued that the court erred in entering judgment of conviction on the verdict of the jury

and in imposing sentence. The indictment consisted of three counts, as heretofore outlined. The jury found the defendant guilty of both statutory and forcible rape. The evidence supports these verdicts. The defendant urges that the verdicts are inconsistent. We cannot agree. In forcible rape the act must be shown to have been against the will of the female. In statutory rape, it is immaterial whether it is with her consent or against her will. In the case at bar the jury was warranted from the evidence in finding the act against the will of the complaining witness under the charges of both forcible and statutory rape. Moreover, a conviction of rape is a conviction of assault to commit rape. (*People* v. *Ristau*, 363 Ill. 583.) Failure to return a verdict as to the charge of assault with intent to commit rape does not constitute reversible error. The lesser offense is included in the greater. The jury sets the penalty in rape cases. There was one rape involved and the jury set only one penalty even though the act constituted both forcible and statutory rape. The verdict was proper and the judgment entered thereon is valid.

"It is not the purpose of a court of review to determine whether or not a record is free from error, but rather to determine whether or not the accused has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond a reasonable doubt." *People* v. *Stavrakas*, 335 Ill. 570, 583.

We conclude from the record that the defendant had a fair trial; that the errors assigned could not reasonably have affected the result of the trial; and that the judgment of the trial court should be affirmed.

The judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*